**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JEROME K. HAMILTON, a.k.a., | ) | |
| CHEIKH AHMED ELOHIM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1422-GMS |
| | ) | |
| CATHY L. GUESSFORD, et. al, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
<u>MOTION FOR SUMMARY JUDGMENT</u>**

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

<u>/s/ Eileen Kelly</u>
Marc P. Niedzielski (I.D. # 2616)
Eileen Kelly (I.D. # 2884)
Deputy Attorneys General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
marc.niedzielski@state.de.us
eileen.kelly@state.de.us
Attorneys for Defendants

DATED:  May 23, 2007

## TABLE OF CONTENTS

TABLE OF CITATIONS............................................................................ iii

NATURE AND STAGE OF THE PROCEEDINGS ...............................................1

SUMMARY OF ARGUMENTS .............................................................................2

STATEMENT OF FACTS .....................................................................................4

ARGUMENT

### ARGUMENT I.

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS
THERE IS NO CONSTITUTIONAL RIGHT TO BE RELEASED
BEFORE THE EXPIRATION OF AN INMATE'S MAXIMUM TERM
OF IMPRISONMENT TO WHICH HE WAS SENTENCED, NOR IS
THERE ANY EVIDENCE THAT PLAINTIFF'S IMPRISONMENT WAS
UNLAWFUL ...............................................................................................11

### ARGUMENT II.

EVEN ASSUMING PLAINTIFF CAN STATE AN EIGHTH
AMENDMENT CLAIM FOR NOT BEING RELEASED EARLY, HIS
CLAIM IS BARRED BY THE DOCTRINE OF *HECK V. HUMPHREY*
WHICH REQUIRES THAT PLAINTIFF EVINCE A FAVORABLE
TERMINATION OF THE SENTENCE .....................................................18

### ARGUMENT III.

DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS
THERE IS NO CONSTITUTIONAL RIGHT TO RELEASE BEFORE
THE FULL EXPIRATION OF SENTENCE, THE LAW WAS NOT
CLEARLY ESTABLISHED AND THE NUMEROUS STATE COURT
DECISIONS MADE DEFENDANTS' CONDUCT OBJECTIVELY
REASONABLE ...........................................................................................20

## ARGUMENT IV.

DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY AND IMMUNITY UNDER DELAWARE'S TORT CLAIMS ACT ..................24

## ARGUMENT V.

UNDER THE ELEVENTH AMENDMENT, DEFENDANTS CANNOT BE HELD LIABLE IN THEIR OFFICIAL CAPACITIES AND ARE NOT PERSONS FOR PURPOSES OF 42 USC § 1983 ......................................27

CONCLUSION ........................................................................................29

## TABLE OF CITATIONS

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...........................................11

Atascadero State Hosp. v. Scanlon, 473 U.S. 234 (1985) .......................................27

Bishop v. Wood, 426 U.S. 341 (1976)....................................................................15

Campbell v. Peters,
    256 F.3d 695 (7th Cir. 2001), *cert. denied*, 535 U.S. 957 (2002)................22

Celotex Corp. Catrett, 477 U.S. 317 (1986) ...........................................................11

Clemente v. Allen, 120 F.3d 703 (7th Cir. 1997) ...............................................18, 19

Edwards v. Balisok, 520 U.S. 641 (1997)...............................................................18

Farmer v. Brennan, 511 U.S. 825 (1994)..........................................................21, 26

Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459 (1945)...................................27

Grant v. City of Pittsburgh, 62 f.3d 485 (3d Cir. 1995)..........................................21

Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,
    442 U.S. 1 (1979)...........................................................................14, 15, 21

Hamilton v. State, 769 A.2d 743 (Del. 2001) .......................................................4, 8

Hamilton v. State, 831 A.2d 881 (Del. 2003) .....................................................9, 19

Hampton v. Borough of Tinton Falls Police Dept., 98 F.3d 107 (3d Cir. 1996)....12

Harley v. Pennsylvania Dep't of Corrections,
    2006 WL 709554 (M.D.Pa. March 21, 2006)..............................................19

Harrison v. Figueroa, 1985 WL 552279 (Del. Super. Jan. 11, 1985).....................24

Hawaii v. Gordon, 373 U.S. 57 (1963) ..................................................................27

Heck v. Humphrey, 512 U.S. 477 (1994) .........................................................18, 19

Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002) .....................................................18

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) .............12

Mitchell v. Dep't of Corrections, 272 F. Supp. 2d 464 (M.D.Pa. 2003) ...............19

Muhammad v. Close, 540 U.S. 749 (2004) ...........................................................18

Ospina v. Dep't of Corrections, 749 F. Supp. 572 (D. Del. 1990) ........................27

Owens v. Ortiz, 2005 WL 1199066 (D.N.J. May 19, 2005)...................................19

Pauley v. Reinhoehl, 848 A.2d 569 (Del. 2003)...............................................24, 25

Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984) ....................27

Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999) ....................................................21

Saucier v. Katz, 533 U.S. 194 (2001) ..............................................................20, 21

Smith v. New Castle County Vo-Tech, 574 F. Supp. 813 (D. Del. 1983)..............25

Snyder v. Andrews, 708 A.2d 237 (Del. 1998) .....................................................16

Spurlin v. Department of Corrections, 230 A.2d 276 (Del. 1967) ........................16

State of Delaware Dep't of Health and Social Services v. Sheppard,
    2004 WL 2850086 ..........................................................................................24

Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002) .....................................................18

Vick v. Haller, 512 A.2d 249 (Del. Super.), *aff'd*, 514 A.2d 782 (Del. 1986) .......25

Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).................................27

## Statutes and Rules

Eighth Amendment of the United States Constitution....................................1, 2, 13

Eleventh Amendment of the United States Constitution ....................................3, 27

Fourteenth Amendment of the Unites States Constitution ................................1, 13

42 U.S.C. § 1983 ...............................................................1, 2, 3, 13, 27

iv

10 Del. C. § 4001(3)................................................................................................25

11 Del. C. § 4381 ...................................................................................................15

11 Del. C. § 4382 ...................................................................................................15

Fed. R. Civ. P. 56(c)...............................................................................................11

## NATURE AND STAGE OF THE PROCEEDINGS

In this civil rights action, Plaintiff Jerome Hamilton, a/k/a Cheikh Ahmed Elohim ("Hamilton"), claims that his prison sentence was miscalculated with the result that he remained incarcerated beyond his release date. Plaintiff has brought this action pursuant to the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C § 1983. He alleges that he was subjected to cruel and unusual punishment and deprived of his liberty without due process. He has also asserted a state law claim for unlawful imprisonment.

The *pro se* Complaint[1] was filed on November 5, 2004 against Defendants Cathy L. Guessford ("Guessford"), Rebecca L. McBride ("McBride"), Robert F. Snyder ("Snyder"), Thomas L. Carroll ("Carroll"), and Stanley W. Taylor, Jr. ("Taylor") [D.I. 2]. (A-1 – A-13).[2] The Answer was filed on March 15, 2005. [D.I. 21]. The Defendants have denied liability to Plaintiff. Gary W. Aber, Esquire entered his appearance on behalf of Hamilton on April 12, 2006. [D.I. 40].

This is Defendants' Opening Brief in support of their Motion for Summary Judgment.

---

[1] In a telephone conference with the Court on May 23, 2007, it was stipulated that plaintiff's present counsel actually drafted the complaint.
[2] "A" refers to Appendix to Defendants' Opening Brief.

1

# SUMMARY OF ARGUMENTS

## I.

Defendants are entitled to summary judgment on plaintiff's 42 U.S.C. § 1983 claim as there is no constitutional right to be released early from prison based on the accrual of good time prior to the maximum expiration of the sentence imposed. Additionally, plaintiff does not identify any evidence to support a state law claim of unlawful imprisonment.

## II.

Assuming that plaintiff could state an Eighth Amendment claim under § 1983, defendants are entitled to judgment as a matter of law as there is no court order that declares that plaintiff was serving an illegal sentence or that plaintiff otherwise received a 'favorable termination' regarding the legality of his sentence.

## III.

Defendant cannot be liable for an alleged constitutional violation under the doctrine of qualified immunity as there is no constitutional right to early release, the law was not clearly established, and a number of state court decisions make the disputed sentence calculations reasonable.

## IV.

Defendants are entitled to judgment as a matter of law under the State Tort Claims Act and there is no private duty owed by defendants to plaintiff regarding sentence calculation.

## **V.**

Defendants cannot be liable under a 42 U.S.C. § 1983 claim in their official capacities as they are not persons under § 1983 and the Eleventh Amendment divests the court of jurisdiction over them in their official capacities.

## STATEMENT OF FACTS

At issue in this case is the interpretation of Hamilton's lengthy and complex sentencing history. The matter is further confused by Hamilton's numerous court filings challenging his sentence and the resulting decisions.

There are five relevant sentencing orders. First, on May 28, 1976, Hamilton was sentenced by Superior Court Judge Stiftel to seven years in prison for Attempted Robbery in the First Degree (IN75-08-0180), with a concurrent five year sentence for Burglary in the Second Degree (IN75-08-0181). *Hamilton v. State*, 769 A.2d 743, 744 (Del. 2001). (A-14). On July 23, 1976, he was sentenced by Superior Court Judge Longobardi to two years in prison for Attempted Theft (IN75-12-0279), to be served consecutively to the seven year sentence. *Id*. (A-15). On January 24, 1977, in an order issued by Judge Longobardi, Hamilton was declared a habitual offender and sentenced to life in prison on charges of Robbery in the First Degree (IN76-08-0906) and Conspiracy in the Second Degree (IN76-08-0907). *Id.* (A-16). On December 17, 1987, Hamilton was sentenced by Superior Court Judge Balick to seven years in prison on another charge of Conspiracy in the Second Degree (IN86-04-1312) and two years for Promoting Prison Contraband (IN86-04-1313). *Id.* (A-17 – A-18).

Finally, on September 2, 1988, pursuant to an order issued by Superior Court Judge Martin, Hamilton's January 24, 1977 sentences were reduced to twenty-five years for Robbery in the First Degree and seven years for Conspiracy in the Second Degree. *Id.* (A-19 – A-20). The September 2, 1988 sentencing

4

order notes that the sentence was "effective January 24, 1977," but also states that "[i]f the defendant is presently serving another sentence, this sentence shall begin at the expiration of such other sentence being served." Id. at 746. (A-19 – A-20).

Plaintiff claims that the twenty-five year sentence should have begun to run in 1977, with the 1987 sentences totaling nine years to run after the twenty-five years, for a total of thirty-four years. Plaintiff's analysis ignores the 1976 sentences, totaling nine years. He is in effect arguing that the twenty-five year sentence should have run concurrently with the 1976 sentences. However, this reasoning is contradicted by the language of Judge Martin's 1988 sentencing order, which directs that the twenty-five years should begin to run after the expiration of any other sentences being served.

Using court sentencing orders, record keeping personnel at the Delaware Department of Correction ("DOC") calculate inmate sentences. (A-22). These calculations are set forth in Offender Status Sheets, which are provided to the inmates. (A-36). A Status Sheet lists the inmate's sentences and various dates pertaining to his sentencing calculation. In particular, the status sheet states the inmate's full term expiration date, which is the date that the inmate would be released assuming he served his entire sentence. (A-24). It also indicates the short term release date, or STRD, which takes into account the maximum amount of good time that the inmate might earn based on good behavior. (A-23 – A-25, A-29).

On November 14, 1988, a DOC employee, S. Daniels, prepared a new Status Sheet for Hamilton based upon his most recent sentencing order. (A-37 – A-38). However, this status sheet reflects a total sentence of just thirty-four years, and fails to take into account Hamilton's two 1976 sentences, totaling nine years. The 1988 status sheet shows a maximum full term expiration date of January 22, 2011, and a STRD of July 17, 1999.

A revised Status Sheet, dated March 21, 1996, and prepared by Guessford, accounts for all of Hamilton's sentencing orders and indicates a total sentence of forty-three years, with a maximum full term expiration date of December 1, 2018 and a STRD of June 11, 2004.[3] (A-39). At that time, Guessford was the Records Supervisor at Delaware Correctional Center ("DCC"), where Hamilton was incarcerated. In 1998, she left DCC to work at DOC's central administration office, and McBride took over her position as Records Supervisor. (A-42, A-45). In preparing the 1996 status sheet, Guessford reviewed all of Hamilton's sentencing orders. (A-26).

On November 29, 1999, Hamilton filed a grievance concerning his 1996 Status Sheet and argued that his correct STRD was July 17, 1999. (A-46). In response to this grievance, McBride reviewed Hamilton's file and concluded that

---

[3] In 1992, in connection with Hamilton's writ of mandamus action challenging his good time credits, Guessford signed an affidavit stating that Hamilton's STRD was July 17, 1999. At her deposition in this matter, Guessford testified that she now feels that the 1988 status sheet was correct and that her 1996 status sheet was in error. (A-27 – A-28).

Hamilton had been sentenced to a total of forty-three years and his STRD was June 11, 2004. (A-47 – A-48).

At her deposition, McBride once again reviewed Hamilton's sentencing orders and his sentence calculation. As she explained, McBride's review took into account Judge Martin's 1988 sentencing order. The court's use of the language "effective January 24, 1977" did not mean that the twenty-five years would begin to run on that date. The 1977 date was significant only because that was the date that Hamilton had been sentenced to life in prison as a habitual offender. (A-31 – A-33). Nothing in the 1988 order indicated that the twenty-five year sentence was to run concurrently with the first nine years set forth in the two 1976 orders. (A-34 – A-35).

Hamilton pursued his grievance through the appeal process and it was denied at every level. (A-49 – A-51).

In addition to filing a prison grievance, Hamilton pursued his claim in several different court proceedings. In February 2000, he filed a petition for writ of mandamus claiming that he was being unlawfully held in prison beyond his release date. Complaint ¶ 31. (A-5). Several months later, he filed a writ of habeas corpus addressing the same issue. Complaint at ¶33. (A-5). In July 2000, Hamilton filed two more petitions for writ of habeas corpus. Complaint at ¶39. (A-6). Hamilton's petitions were denied repeatedly. (A-52 - A-56).

Hamilton appealed the denial of his petitions for writ of habeas corpus and writ of mandamus to the Delaware Supreme Court. In its April 12, 2001 decision,

the court agreed with DOC's sentence calculation with respect to the start date of the twenty-five year sentence; the court held that the twenty-five years must run consecutively to the 1976 sentences. *Hamilton*, 769 A.2d at 746. The court further concluded that the twenty-five year sentence and the seven year sentence were intended to run consecutively, not concurrently. Thus, Hamilton's sentence totaled fifty years. Id. at 745.

In August 2002, Hamilton filed a motion for post-conviction relief. Complaint ¶48. (A-7). In the motion, he requested a copy of the transcript from the 1988 sentencing hearing. Superior Court Judge Toliver denied the motion, holding, as the Supreme Court had, that Judge Martin intended the twenty-five years and the seven years to run consecutively, and Plaintiff once again appealed to the Delaware Supreme Court. (A-57 – A-59). The Supreme Court remanded the matter in order to reconstruct the 1988 proceeding, an effort which was ultimately unsuccessful. However, in an April 7, 2003 letter, counsel for the State of Delaware agreed with Plaintiff that the twenty-five years and the seven years should have run concurrently. (A-60 – A-61).

On May 16, 2003, Judge Toliver issued an order in which he incorrectly stated that the State had conceded the merits of Hamilton's position. (A-62 – A-66). While the State had agreed that the two sentences set forth in Judge Martin's order were intended to run concurrently, the State never agreed that the sentence was intended to begin in 1977. Judge Toliver ordered DOC to recalculate

8

Hamilton's sentence with the twenty-five years and seven years running concurrently from January 24, 1977.

On June 11, 2003, the State filed "Objections to Report on Remand." In addition to noting Judge Toliver's mischaracterization of the State's position, the State argued that the Supreme Court's 2001 decision constituted law of the case. (A-67 – A-70).

On September 3, 2003, the Delaware Supreme Court issued a decision in direct conflict with its 2001 ruling. *Hamilton v. State*, 831 A.2d 881 (Del. 2003). Without explanation, the court reversed its earlier position and found that the twenty-five year sentence should have begun to run in 1977. *Id*. at 886. The Court rejected the State's law of the case argument. *Id*. at 889. The matter was remanded for expedited proceedings consistent with Judge Toliver's May 16, 2003 order. Id. The Supreme Court did not rule that Hamilton had been held in prison illegally and did not direct his release.

Hamilton was released from prison on October 3, 2003.

In addition to Guessford and McBride, former Records Supervisors at DCC, Hamilton also named Snyder, Carroll and Taylor as Defendants. Snyder was the Warden at DCC until 2001. (A-72). Carroll has been the Warden at DCC from 2001 until the present. (A-75). Taylor is the former Commissioner of DOC. The allegations as to these Defendants are that they failed to investigate Hamilton's grievances regarding his release date and failed to ensure that McBride performed her duties correctly. However, all three testified that complaints

9

regarding sentence calculations were delegated to staff in the records department.

(A-73, A-76, A-78).

# ARGUMENT I.

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS THERE IS NO CONSTITUTIONAL RIGHT TO BE RELEASED BEFORE THE EXPIRATION OF AN INMATE'S MAXIMUM TERM OF IMPRISONMENT TO WHICH HE WAS SENTENCED, NOR IS THERE ANY EVIDENCE THAT PLAINTIFF'S IMPRISONMENT WAS UNLAWFUL.

## Standard for Summary Judgment:

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is one that "may reasonably be resolved in favor of either Party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 259 (1986). The moving party bears the initial burden of demonstrating the absence of material issues of fact. *Celotex Corp.*, at 323. However, the moving party need not support its motion with affidavits or other documents disproving the nonmoving party's claim, but need only "show - - that is point out to the district court - - that there is an absence of evidence to support the nonmoving party's case." *id.*, at 325. The nonmoving party must go beyond the pleadings and through affidavits or other evidence demonstrate the

existence of a genuine issue of material fact. *Id.*, at 314. The district court is required to construe the evidentiary record so as to give the nonmoving party reasonable factual inferences. *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996). Summary judgment should be granted if the court finds, in consideration of all of the evidence, that no reasonable trier of fact could find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

**(a)      Plaintiff's claims against the defendants**

Plaintiff contends that defendants Guessford and McBride "negligently maintained correctional records and miscomputed the plaintiff's sentence." Plaintiff contends that defendant Snyder "refused to correct errors of Guessford and McBride when requested by plaintiff." Finally, plaintiff contends that defendant Taylor "refused to enforce court orders directing that the plaintiff's sentence be properly calculated and/or release him."   Plaintiff's Answers to Defendant's Interrogatories, Response to No. 1.   (A-80).   Plaintiff's central contention is that his 'good time release date' (Short Term Release Date) was July 17, 1999, while defendants contend that plaintiff's 'good time release date' was June 11, 2004.  Complaint ¶¶ 18, 43.  (A-3, A-7).  It is undisputed that plaintiff was conditionally released from Delaware Correctional Center on October 3, 2003, and is now on parole until the maximum expiration of his sentence, January 23, 2011.  Complaint ¶ 59.  (A-8).  (A-82 – A-83).

Plaintiff's complaint alleges three counts: Count I alleges a violation of plaintiff's Eighth Amendment rights by imprisoning him beyond his 'good time release date', Count II alleges deprivation of liberty without due process, and Count III alleges a state claim of unlawful imprisonment. For the reasons that follow, defendants are entitled to summary judgment as a matter of law as there is no constitutional right to be released before serving the maximum sentence of imprisonment, plaintiff's due process claim is vitiated by the record of plaintiff's litigation in the Superior Court on the matter, and there is no evidence that would support a state law claim of false imprisonment.

**(b)    No constitutional right to be released before serving the maximum term of imprisonment**

Plaintiff claims that his good time release date was July 17, 1999 while defendants contend that Hamilton's good time release date should have been no earlier than June 11, 2004. Since plaintiff was released on October 3, 2003, he claims that his rights under the Eighth and Fourteenth Amendments were violated as he was not released on his claimed conditional release date in 1999. Plaintiff does not claim that he was held beyond the full terms of his sentences for his various offenses. Plaintiff does not question the validity of any of his sentences, merely how those sentences should have been calculated.

However, irrespective of the parties' contentions regarding the proper calculation of his sentences and the possible maximum accrual of good time, plaintiff's claim under 42 U.S.C. § 1983 must fail as there is no right under the

United States Constitution to be conditionally released before the expiration of his sentence.

> **There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence**.  The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined.  But the conviction, with all its procedural safeguards, has extinguished that liberty right:  'given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." (internal citation omitted) (emphasis added)

*Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979).  The Supreme Court in *Greenholtz*, distinguished the present situation where an inmate who has not served his full sentence would like to be released early from other situations such as where an inmate had been released on parole and that liberty was being revoked.  In the present scenario, plaintiff has been accorded all of his constitutional protections in his convictions, and his desire to be conditionally released on good time goes back to his initial resistance to being confined.  Hamilton does not challenge the validity of any of the convictions, but claims that he could have been conditionally released due to good time on July 17, 1999.

The *Greenholtz* Court recognized that while there is no substantive right to good time early release there may be protected liberty interests created by state law that may engender due process protections.  *Id*. 442 U.S. at 11-16.  The question of what interest, if any, is created by a state statute is best viewed by

considering how the state courts have defined that interest under their own statutes. *Id*. 442 U.S. at 12, citing, *Bishop v. Wood*, 426 U.S. 341, 345 (1976).

In the instant matter, the 'good time' statute in effect at the time of sentence imposition provided:

> **§ 4381. When diminution given**.
> A person committed to the Department may merit diminution of his confinement by his behavior, fidelity and compliance with the rules.
>
> **§ 4382. Rate of reduction of confinement.**
> When a person has not been guilty of any violation of discipline or any rules of the Department and has labored with diligence and fidelity, diminution of sentence shall be:
> (1)    For each month commencing on the first day of his arrival at the facility there shall be a reduction of 5 days from the sentence;
> (2)    When more than 1 year of a sentence has elapsed, less the reduction of sentence as provided in subdivision  (1) of this section, then from that time there shall be a reduction of 7 days for each month of the sentence;
> (3)    When more than 2 years of a sentence has elapsed, less the reduction of sentence as provided in subdivisions (1) and (2) of this section, then from that time there shall be a reduction of 9 days for each month of the sentence; and
> (4)    When 3 or more years of a sentence has elapsed, less the reduction of sentence as provided in subdivisions (1) - (3) of this section, then from that time there shall be a reduction of 10 days for each month of the sentence.

The above statutory language permits an inmate to earn 'good time' or "diminution of his confinement by his behavior, fidelity and compliance with the rules." *Id*.  The statute does not provide that an inmate "shall" earn good time (or be considered for parole) as was the case in the Nebraska Statute in *Greenholtz*.  In fact, the Delaware Supreme Court has held earned good time is subject to

15

forfeiture up to the time that the inmate has served his full sentence which in the present matter is the year 2011. *Snyder v. Andrews*, 708 A.2d 237, 245 (Del. 1998)["Furthermore, even after an inmate was released on parole, his good time credits remain subject to forfeiture if he did not comply with the conditions of his early release. (citation omitted) … 'it is not necessarily true that earned good time prior to parole becomes a vested right in a prisoner which may not be taken from him.'"]   Accordingly, under Delaware law plaintiff does not have a liberty interest until he has completed his entire sentence.

### (c)    Plaintiff does not have a due process claim as to good time

For the reasons set out immediately preceding, plaintiff does not have a protected liberty interest in the accrual or calculation of good time. *Snyder v. Andrews, supra*;  *Spurlin v. Department of Corrections*, 230 A.2d 276 (Del. 1967). Even assuming that plaintiff had a protected liberty interest in good time, the undisputed record demonstrates that he was accorded due process to an extreme. Plaintiff's own complaint reveals all of the administrative and legal steps he took to have first the Superior Court and then the Supreme Court review the calculations of his sentences.  Complaint ¶¶ 16-43.  (A-3 – A-7).  In April, 2001, the Delaware Supreme Court affirmed the Superior Court's dismissal of plaintiff's petitions thereby holding the State's sentence calculations were correct. Complaint ¶ 43.  (A-7).  Thereafter, plaintiff commenced a new round of petitions that resulted in a Delaware Supreme Court decision on September 30, 2003, that favors plaintiff's contention that his good time release date was July 17, 1999.

According to plaintiff's complaint, the Supreme Court's 2003 decision was that no one in Superior Court checked the Superior Court records[4]. Complaint ¶ 57. (A-8).

Accordingly, there is no evidence that would support a due process claim in this matter.

**(d)    The record is absent any evidence of an unlawful imprisonment claim**

On September 6, 2006, plaintiff answered defendants' first set of interrogatories which had been served on March 2, 2006.  Interrogatory No. 1, requests:

> 1)  With respect to each and every claim in your Complaint:
>     (a)    Identify all facts that refute, relate to, or support your contention;
>     (b)    Identify the specific behavior or conduct that you allege that each Defendant engaged in;
>     (c)    Identify all persons with knowledge of such contention or facts;
>     (d)    Identify all documents that reflect, refer to or relate to such contention or facts.

In response, plaintiff does not identify any basis for the unlawful imprisonment claim and defendants are entitled to judgment as a matter of law.  A-80.

---

[4] Of course, none of the named defendants would have had access to the Superior Court's records.

**ARGUMENT II.**

EVEN ASSUMING PLAINTIFF CAN STATE AN EIGHTH
AMENDMENT CLAIM FOR NOT BEING RELEASED EARLY,
HIS CLAIM IS BARRED BY THE DOCTRINE OF *HECK V.
HUMPHREY* WHICH REQUIRES THAT PLAINTIFF EVINCE A
FAVORABLE TERMINATION OF THE SENTENCE.

The United States Supreme Court has held that, where a plaintiff asserts

Section 1983 liability based on the length of his sentence, that plaintiff must have

first satisfied the favorable termination rule set forth in *Heck v. Humphrey*, 512

U.S. 477 (1994).   See also *Muhammad v. Close*, 540 U.S. 749, 755 (2004);

*Edwards v. Balisok*, 520 U.S. 641 (1997); *Torres v. Fauver*, 292 F.3d 141 (3d Cir.

2002); *Leamer v. Fauver*,  288 F.3d 532, 542 (3d Cir. 2002).   The Court in *Heck*

stated:

> [I]n order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid, a
> § 1983 plaintiff must prove that the conviction or sentence has been
> reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination, or
> called into question by a federal court's issuance of a writ of habeas
> corpus . . . A claim for damages bearing that relationship to a
> conviction or sentence that has not been so invalidated is not
> cognizable under § 1983.   Thus, when a state prisoner seeks
> damages in a § 1983 suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily imply the
> invalidity of the conviction or sentence; if it would, the complaint
> must be dismissed unless the plaintiff can demonstrate that the
> conviction or sentence has already been invalidated.

*Heck*, 512 U.S. 486-487.

The *Heck* favorable termination rule applies to a claim that a sentence was

miscalculated.  See *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997); *Mitchell*

18

*v. Dep't of Corrections*, 272 F. Supp. 2d 464, 481 (M.D. Pa. 2003); *Owens v. Ortiz*, 2005 WL 1199066, at *3 (D.N.J. May 19, 2005) (attached hereto as Exhibit A). Thus, a plaintiff may file a claim for damages under § 1983 for injuries caused by imprisonment beyond his release date only once his confinement has been invalidated by state authorities, the state courts or by the issuance of a writ of habeas corpus. *Owens*, 2005 WL 1199066, at *3.

In this case, the Delaware Supreme Court never ordered Hamilton's release, never specified a release date and never held that Hamilton had been held beyond his release date. The Court only remanded the matter for recalculation of Hamilton's sentence. *Hamilton*, 831 A.2d at 889. Hamilton's confinement was not invalidated, and the favorable termination rule was not satisfied. Therefore, Hamilton's Section 1983 claim is not cognizable. Under the same rationale, Hamilton's state law claim for unlawful imprisonment is also barred. See *Harley v. Pennsylvania Dep't of Corrections,* 2006 WL 709554, at *4 (M.D. Pa. March 21, 2006) (attached hereto as Exhibit B) (plaintiff could not maintain a cause for unlawful imprisonment until the basis for that imprisonment had been rendered invalid).

Thus, under the favorable termination rule set forth in *Heck v. Humphrey*, Defendants are entitled to judgment as a matter of law.

## ARGUMENT III.

DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS THERE IS NO CONSTITUTIONAL RIGHT TO RELEASE BEFORE THE FULL EXPIRATION OF SENTENCE, THE LAW WAS NOT CLEARLY ESTABLISHED AND THE NUMEROUS STATE COURT DECISIONS MADE DEFENDANTS' CONDUCT OBJECTIVELY REASONABLE.

Qualified immunity shields government officials from liability while performing discretionary functions when their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. Under *Saucier v. Katz,* 533 U.S. 194 (2001), qualified immunity requires the following analysis in the following sequence, and if the plaintiff fails to establish any portion, then defendant is entitled to immunity.

(1)    In a light most favorable to plaintiff, do his allegations make out a constitutional violation? If not, the defendants are entitled to immunity. *Id.* 533 U.S. at 201;

(2)    If plaintiff has properly alleged [or evinced] a constitutional violation, within the specific context of this case, then he must demonstrate that it was so clearly established that a reasonable individual in defendants' respective positions would know it was unlawful.   If plaintiff cannot establish by a review of legal precedents that the law was clearly established, then the defendants are entitled to immunity.  *Id.*  533 U.S. at 201-202.

(3)    Finally, even if the law was clearly established, the qualified immunity inquiry has a further dimension: defendants are still entitled to immunity

if any reasonable individual in the defendants' respective positions could nevertheless believe that the conduct was lawful. *Id.* at 205-206.

Crucial to any claim of qualified immunity is an objective, fact specific inquiry establishing the actions of each individual defendant. *See Rouse v. Plantier,* 182 F.3d 192, (3d Cir. 1999). *See also Grant v. City of Pittsburgh*, 62 F.3d 485, 491 (3d Cir. 1995). In this case, Plaintiff has made the following allegations against Defendants: he claims that Guessford and McBride "[n]egligently maintained correctional records and miscomputed the plaintiff's sentence," and he claims that Snyder and Taylor "[r]efused to enforce court orders directing that the plaintiff's sentence be properly calculated and/or to release him." Plaintiff's Answers to Interrogatories. (A-80). Of course, neither negligence nor miscomputing a sentence are constitutional violations. Eighth Amendment violations require deliberate indifference by prison officials. *Farmer v. Brennan*, 511 U.S. 825 (1994)

In this case, as a threshold matter, Hamilton cannot show a constitutional violation (assuming he evinced some deliberate indifference): he had no constitutional right to be conditionally released before the expiration of his sentence. *Greenholtz*, 442 U.S. at 7.

Further, assuming arguendo that Plaintiff can demonstrate a constitutional violation, the Defendants are nevertheless entitled to qualified immunity because the constitutional right was not clearly established during the time period in question.

21

Hamilton filed numerous petitions challenging his sentence calculation. However, his claims were consistently rejected by the courts until September 2003, when the Delaware Supreme Court issued its second decision. Immediately thereafter, Hamilton was released from prison.

However, prior to September 2003, there was no legal authority even suggesting that Hamilton's sentence had been calculated incorrectly. In 2001, the Supreme Court agreed with DOC's position that Hamilton's twenty-five year sentence did not begin to run until after he completed his 1976 sentences. In fact, the Court found that Hamilton's sentence was fifty years, not forty-three, as calculated by DOC. Thus, prior to September 2003, Hamilton had no clearly established right to release from incarceration.

In *Campbell v. Peters*, 256 F.3d 695 (7th Cir. 2001), *cert. denied*, 535 U.S. 957 (2002), plaintiff claimed that he was wrongfully detained in prison for a year due to improper revocation of his good time credits. The court found that plaintiff was kept in prison beyond his proper release date dictated by state law. *Id*. at 700. However, the court also found that it was not until after the conduct in question that a state court definitively interpreted the relevant statute as barring the type of revocation of good time that occurred. The court held that defendant correctional officials were protected by qualified immunity: "The trial court's decision, which appeared in July of 1990, has very little bearing on the reasonableness of the defendants' actions prior to its issuance." Id. at 701.

Given the circumstance that Hamilton's petitions had been consistently denied, and specifically denied in 2001 by the Delaware Supreme Court, prior to 2003, a reasonable official, in Defendants' circumstances, could not possibly have known that Hamilton was being held in prison beyond his proper release date.

Hamilton may point to the Delaware Supreme Court's decision in 2003 in support of his argument that he should have been released from prison in 1999. He may rely on the 2003 decision to argue that Guessford's and McBride's sentence calculations were wrong, and Snyder, Carroll and Taylor should have investigated his complaints and uncovered the error. However, the 2003 decision has no relevance to a determination of whether Defendants' conduct was reasonable prior to that time.

At her deposition, Guessford testified that she now feels that her sentence calculation, done in 1996, is incorrect. However, the 1996 status sheet reflected her sentence calculation at that time, a calculation supported by a number of courts in rejecting Hamilton's position. Qualified immunity protects an official, even where a mistake was made, if the mistake was reasonable. Given that the State's highest court concluded that the 1996 sentence calculation was done properly, any "mistake" was reasonable, and Guessford is entitled to qualified immunity.

Thus, even assuming, as Hamilton alleges, that his correct STRD was 1999, reasonable officials in Defendants' circumstances could not possibly have understood that their conduct was prohibited. Thus, Defendants are entitled to qualified immunity.

23

## ARGUMENT IV.

DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY
AND IMMUNITY UNDER DELAWARE'S TORT CLAIMS ACT.

Hamilton has asserted a State law claim for unlawful or false imprisonment. False imprisonment is the unlawful restraint by one person of the physical liberty of another. *Harrison v. Figueroa*, 1985 WL 552279, at *2 (Del. Super. Jan. 11, 1985) (attached hereto as Exhibit C). The elements of the tort are a) restraint which is both b) unlawful and c) against one's will. Id.

As set forth herein, Hamilton has not identified any basis for this claim in response to defendants' discovery and he had no constitutional right to early release.

The Delaware Supreme Court has adopted a two part test to be used in determining whether an action under state law is barred by sovereign immunity. *Pauley v. Reinhoehl*, 848 A.2d 569 (Del. 2003). A plaintiff must show that "(1) the State has waived the defense of sovereign immunity for the actions mentioned in the complaint; and (2) the State Tort Claims Act does not bar the action." *Id.* at 573. "The defense of sovereign immunity only can be waived by an act of the General Assembly that expressly manifests an intention to do so." *State of Delaware Dep't of Health and Social Services v. Sheppard,* 2004 WL 2850086, at *1 (Del. Supr. Dec. 10, 2004) (attached hereto as Exhibit D).

In this case, the General Assembly has enacted no legislation which would waive sovereign immunity for the claim at issue in this case: the allegation that

plaintiff was falsely imprisoned due to a sentence miscalculation. Thus, Defendants are entitled to sovereign immunity.

Further, Defendants are immune from suit pursuant to Delaware's State Tort Claims Act. The Act shields State employees and officials from liability for acts done in good faith, without gross and wanton negligence, and arising out of and in connection with the performance of official discretionary duties. 10 *Del. C.* §4001(3). See also *Smith v. New Castle County Vo-Tech*, 574 F. Supp. 813, 820 (D. Del. 1983). As long as the act complained of (i) arose out of and in connection with official duties involving the exercise of discretion; (ii) was performed in good faith and in belief that the public interest would best be served thereby; and (iii) was performed without gross or wanton negligence, the plaintiff has the burden of alleging circumstances that would negate the existence of one or more of these criteria. *Vick v. Haller*, 512 A.2d 249, 252 (Del. Super.), *aff'd*, 514 A.2d 782 (Del. 1986).

Any doubt regarding the construction of the Act should be resolved in the favor of the state employee. *Pauley v. Reinhoehl*, 848 A.2d 561, 562 (Del. 2003). The plaintiff has the burden of demonstrating that the Act does not apply. *Id.* at 564.

It is undisputed that, in connection with the allegations in this case, Defendants were performing their official duties involving the exercise of discretion. The question presented is whether Defendants acted in good faith and without gross or wanton negligence. Plaintiff has made the following allegations

25

against Defendants: he claims that Guessford and McBride "[n]egligently[5] maintained correctional records and miscomputed the plaintiff's sentence," and he claims that Snyder and Taylor "[r]efused to enforce court orders directing that the plaintiff's sentence be properly calculated and/or to release him." Plaintiff's Answers to Interrogatories. (A-80).

As set forth elsewhere herein, prior to 2003, Hamilton's claims that his sentence had been improperly calculated were consistently rejected by the courts. In 2001, the DOC's conclusion that Hamilton's STRD was 2004 was supported by the Delaware Supreme Court. Prior to 2003, Defendants had no reason to believe that Hamilton's sentence had been calculated incorrectly, or that he was being held unlawfully.

Thus, in these circumstances, there can be no showing that Defendants did not act in good faith, or that they acted with gross or wanton negligence. Thus, Hamilton's claim of unlawful imprisonment is barred by the State Tort Claims Act.

---

[5] The United States Supreme Court has held that negligence does not present a constitutional violation. *See Farmer v. Brennan,* 511 U.S. 825, 835 (1994).

## ARGUMENT V.

UNDER THE ELEVENTH AMENDMENT, DEFENDANTS CANNOT BE HELD LIABLE IN THEIR OFFICIAL CAPACITIES AND ARE NOT PERSONS FOR PURPOSES OF 42 USC § 1983

"[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This preclusion extends to state officials when "the state is the real, substantial party in interest." Id. at 101 (quoting *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464 (1945)). "Relief sought nominally against an [official] is in fact against the sovereign if the decree would operate against the latter." Id. (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). A State may waive its Eleventh Amendment immunity. However, such waiver must constitute an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Dep't of Corrections*, 749 F. Supp. 572, 578 (D. Del. 1990) (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238 n.1 (1985)).

Additionally, defendants in their official capacities are not persons for claims under 42 U.S.C. 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989).

In this case, the State of Delaware has neither consented to Hamilton's suit nor waived its immunity. Therefore, under the Eleventh Amendment and *Will,* Defendants cannot be held liable in their official capacities.

27

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendants are entitled to summary judgment as to all of Plaintiff Jerome Hamilton's claims.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Eileen Kelly
Marc P. Niedzielski (I.D. # 2616)
Eileen Kelly (I.D. # 2884)
Deputy Attorneys General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
marc.niedzielski@state.de.us
eileen.kelly@state.de.us
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2007, I electronically filed Defendants' Opening Brief In Support of Their Motion For Summary Judgment with the Clerk of Court using CM/ECF which will send notification of such filing to the following:  Gary W. Aber, Esquire.

/s/ Eileen Kelly
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
eileen.kelly@state.de.us