Westlaw.

Not Reported in F.Supp.2d    Page 1

Not Reported in F.Supp.2d, 2005 WL 1199066 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

Owens v. Ortiz
D.N.J.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. New Jersey.
Henry OWENS, Plaintiff,
v.
Administrator ORTIZ, et al., Defendants.
No. Civ. 05-2351(WGB).

May 19, 2005.

Henry Owens, East Jersey State Prison, Rahway, New Jersey, Plaintiff pro se.

*OPINION*

BASSLER, J.

**\*1** Plaintiff Henry Owens seeks to bring this action *in forma pauperis* without prepayment of fees pursuant to 28 U.S.C. § 1915. Based on his affidavit of poverty, prison account statement, and the apparent absence of three dismissals under 28 U.S.C. § 1915(g), the Court (1) grants Plaintiff's application to proceed *in forma pauperis;* (2) directs the Clerk to file the Complaint without pre-payment of the filing fee; (3) assesses the $150.00 filing fee against Plaintiff; (4) directs the New Jersey Department of Corrections ("NJDOC") to forward an initial partial filing fee to the Clerk from Plaintiff's prison account; and (5) directs the NJDOC to forward payments from Plaintiff's prison account to the Clerk each subsequent month that the amount in the account exceeds $10.00, until the $150.00 filing fee is paid in full. *See* 28 U.S .C. § 1915(a), (b). Having thoroughly reviewed Plaintiff's allegations, the Court dismisses the Complaint.

### I. BACKGROUND

Plaintiff sues prison administrators Ortiz and Shebes for failure to investigate his claim that his maximum sentence date was miscalculated and expired on December 24, 1999. He asserts that in 1995, when the New Jersey judge imposed a five-year sentence, he ordered the New Jersey parole to run concurrently with Plaintiff's Georgia parole. Plaintiff asserts that both sentences maxed out on December 24, 1999, but New Jersey officials failed to act on his complaint that his sentence expired. He seeks relief awarding damages of $200 per day for each day he has been illegally incarcerated and other relief.

### II. LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental entity, officer or employee. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a), (b). The Court is required to identify cognizable claims and to dismiss any claim which is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.*

A *pro se* complaint is held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520 (1972). A claim is frivolous within the meaning of 28 U.S.C. § 1915A if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." *Neitzke v. Williams,* 490 U.S. 319, 328 (1989); *see also Roman v. Jeffes,* 904 F.2d 192, 194 (3d Cir.1990). ?A pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Milhouse v. Carlson,* 652 F.2d 371, 373 (3d Cir.1981) (quoting *Haines,* 404 U.S. at 520).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d, 2005 WL 1199066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

*III. DISCUSSION*

**\*2** Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law. Section 1983 provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970); *Sample v. Diecks,* 885 F.2d 1099, 1107 (3d Cir.1989).

A prisoner's request for equitable relief releasing him from custody is not cognizable under 42 U.S.C. § 1983. *See Preiser v. Rodriguez,* 411 U.S. 475 (1973); *Wolff v. McDonnell,* 418 U.S. 539, 554 (1974). "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser,* 411 U.S. at 500. [FN1] This Court notes that Plaintiff filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his confinement beyond the expiration of his sentence, *see Owens v. Arch,* Civil No. 04-700(SRC) (D.N.J. filed Feb. 13, 2004), which is pending before Judge Chesler. Accordingly, to the extent that Plaintiff seeks release from incarceration, the claim is not cognizable under § 1983 and Plaintiff's exclusive remedy is his pending § 2254 Petition.

FN1. *See also Coady v. Vaughn,* 251 F.3d 480 (3d Cir.2001) (state prisoner's challenge to denial of parole or challenge to the legality of continued state custody must be brought under § 2254 which requires the exhaustion of state court remedies); *Brown v. Fauver,* 819 F.2d 395 (3d Cir.1987) (inmate's civil rights action seeking restoration of good time credits was in essence an action seeking habeas corpus relief which is not cognizable under § 1983).

Nor is Plaintiff's damage claim cognizable under § 1983. *See Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). A civil rights claim under § 1983 seeking damages for allegedly unconstitutional imprisonment is not cognizable under § 1983 if a favorable judgment would necessarily imply the invalidity of the confinement. *Id.* As the United States Supreme Court recently explained,
a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson,* 125 S.Ct. 1242, 1248 (2005); *accord Leamer v. Fauver,* 288 F.3d 532, 542 (3d Cir.2002).

**\*3** As shown above, neither Plaintiff's request for release nor his claim for damages for wrongful incarceration beyond his maximum sentence is cognizable under 42 U.S.C. § 1983. Plaintiff may file a claim for damages under § 1983 for injury caused by imprisonment beyond his maximum sentence once his confinement has been invalidated by state authorities, the state courts or by issuance of a writ of habeas corpus.[FN2] Because his claims are not cognizable under § 1983 at this time, the Court is constrained to dismiss Plaintiff's Complaint without prejudice.[FN3]

FN2. *See Sample v. Diecks,* 885 F.2d 1099, 1110 (3d Cir.1989) (a prison official

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2005 WL 1199066 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

with a duty to investigate, check, or report may be liable for damages under § 1983 for inflicting cruel and unusual punishment if the official had knowledge of the problem, the official either failed to act or took only ineffectual action such that he or she was deliberately indifferent to the prisoner's plight, and there was a causal connection between the official's response and the infliction of the unjustified detention).

FN3. "When a plaintiff files a § 1983 action that cannot be resolved without inquiring into the validity of confinement, the court should dismiss the suit without prejudice" *United States v. Miller,* 197 F.3d 644, 652 n. 7 (3d Cir.1999).

### IV. CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's application to file the Complaint *in forma pauperis* and dismisses the Complaint without prejudice.

D.N.J.,2005.
Owens v. Ortiz
Not Reported in F.Supp.2d, 2005 WL 1199066 (D.N.J.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                            Page 1

Not Reported in F.Supp.2d, 2006 WL 709554 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Harley v. Pennsylvania Dept. of Corrections
M.D.Pa.,2006.
Only the Westlaw citation is currently available.
United States District Court,M.D. Pennsylvania.
James Luke HARLEY, Plaintiff
v.
PENNSYLVANIA DEPARTMENT OF
CORRECTIONS, et al., Defendants
**No. 3:CV-05-0414.**

March 21, 2006.

James Luke Harley, Waymart, PA, pro se.
Sarah C. Yerger, Office of Attorney General,
Harrisburg, PA, for Defendants.

*MEMORANDUM AND ORDER*
NEALON, J.
**\*1** James Luke Harley ("Harley"), an inmate
confined in the State Correctional Institution,
Waymart, Pennsylvania ("SCI-Waymart"), filed this
*pro se* civil rights action pursuant to 42 U.S.C. §
1983. He claims that he has received a reduction in
his sentence which Defendants refuse to
acknowledge. (Doc. 1, complaint). The named
Defendants are the following employees of the
Department of Corrections ("DOC"), Jeffrey Beard,
DOC-Secretary; Raymond Colleran, SCI-Waymart
Superintendent; Paul Delrosso, SCI-Waymart
Programs Director; Vito Cassella, SCI-Waymart
Inmate Records Manager; Diane Piasecki,
SCI-Waymart Corrections Records Specialist; Carl
Pucci, SCI-Waymart Block Unit Manager; Milton
Friedman, SCI-Waymart Block Unit Manager;
Suzzette McMonagle, SCI-Graterford Records
Specialist; Kathy Manley, SCI-Waymart Drug and
Alcohol Treatment Specialist; Laurie Hess,
SCI-Waymart Sex Offender/Drug and Alcohol
Treatment Specialist; Joe Grillo, SCI-Waymart
Sexual Offender Treatment Specialist; Robert Long,
SCI-Waymart Corrections Counselor; Vivian
Miller, Philadelphia Clerk of Courts; and Carolyn

Engal Temin, Philadelphia Court of Common Pleas
Judge. By Order dated February 7, 2006,
Defendants Temin and Miller were dismissed from
the action. (Doc. 36).

Presently before the Court is the remaining
Defendants' motion for summary judgment.[FN1]
(Doc. 19). This motion is fully briefed and is ripe
for disposition. For the reasons set forth below, the
Defendants' motion for summary judgment will be
granted.

> FN1. Defendants' motion was initially filed
> as a motion to dismiss. (Doc. 19). Because
> matters outside the pleadings, which could
> be not be excluded, were presented to the
> Court, by Order dated February 7, 2006,
> Defendants' motion to dismiss was
> converted to a motion for summary
> judgment. (Doc. 36).

*Standard of Review*

Federal Rule of Civil Procedure 56(c) requires the
court to render summary judgment "... forthwith if
the pleadings, depositions, answers to
interrogatories, and admissions on file, together
with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of
law." Fed.R.Civ.P. 56(c). "[T]his standard provides
that the mere existence of *some* alleged factual
dispute between the parties will not defeat an
otherwise properly supported motion for summary
judgment; the requirement is that there be no
genuine issue of *material* fact." *Anderson v. Liberty
Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505,
91 L.Ed.2d 202 (1986) (emphasis in original).

A disputed fact is "material" if proof of its
existence or nonexistence would affect the outcome
of the case under applicable substantive law.
*Anderson,* 477 U.S. at 248; *Gray v. York*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"B"

Not Reported in F.Supp.2d                                                      Page 2

Not Reported in F.Supp.2d, 2006 WL 709554 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir.1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America,* 927 F.2d 1283, 1287-88 (3d Cir.1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler,* 986 F.2d 682 (3d Cir.1993) ; *Clement v. Consolidated Rail Corporation,* 963 F.2d 599, 600 (3d Cir.1992); *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) [FN2] to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corporation v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. *See Harter v. G.A.F. Corp.,* 967 F.2d 846, 851 (3d Cir.1992).

FN2. Harley was provided with copies of M.D. Pa. Local Rules 7.1 through 7.8, Local Rule 26.10, and Federal Rule of Civil Procedure 56(e). In relevant part, Rule 56(e) states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Local Rule 7.4 provides in relevant part:

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

(*See* Doc. 4, Standing Practice Order).

*Statement of Facts*

**\*2** From the pleadings, declarations and exhibits submitted therewith, the following facts can be ascertained as undisputed.

In 1986, Harley was arrested and charged with, *inter alia,*[FN3] two counts of rape, one count of involuntary deviate sexual intercourse, two counts of robbery, one count of possession of a weapon with intent to commit a crime and one count of aggravated assault, for a total of seven charges. (Doc. 40, Criminal Action Docket Sheet). On January 20, 1987, Harley entered a plea of guilty to the charges listed above. *Id.*

FN3. Plaintiff's six other charges, CP 8604-1419, 1421, 1423, 1424, and 1427 were nolle prossed. (Doc. 22, Commitment Order).

On March 17, 1987, Harley was sentenced on the seven charges as follows:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 3

Not Reported in F.Supp.2d, 2006 WL 709554 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

| | |
|---|---|
| CP 8604-1426 | Rape-72 to 180 months in a state correctional institution. (Doc. 1, complaint, Ex. A, May 12, 2003 letter and Doc. 40, Criminal Docket Sheet). |
| CP 8604-1425 | Involuntary Deviate Sexual Intercourse-72 to 180 months in a state correctional institution consecutive to 8604-1426. *Id.* |
| CP 8604-1422 | Robbery-72 to 180 months in a state correctional institution consecutive to 8604-1425. *Id.* |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 4

Not Reported in F.Supp.2d, 2006 WL 709554 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

CP
8607-2113      Rape-72 to 180 months in a state correctional institution, to run consecutive to 8604-1422. (Doc. 22, Commitment Orders).

CP
8607-2115      Robbery-72 to 180 months in a state correctional institution, to consecutive to 8607-2113. (Doc. 22, Commitment Orders).

CP
8607-2119      Aggravated Assault-18 to 120 months in a state correctional institution, to run consecutive to 8607-2115.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5

Not Reported in F.Supp.2d, 2006 WL 709554 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

|  |  |
|---|---|
| CP 8607-2118 | (Doc. 22, Commitment Orders). Possession Instrument of Crime-18 to 60 months in a state correctional institution, to run consecutive to 8607-2119. (Doc. 22, Commitment Orders). |

Harley's total sentence of thirty-three (33) to ninety (90) years, was directed "to commence in Farview State Hospital for commitment of 90 days under Sec. 304 via 401 of Mental Health Proc. Act." (Doc. 40, Criminal Docket Sheet). On June 23, 1987, Harley's mental health status was reviewed, and he was recommitted to Farview State Hospital for another ninety (90) days. *Id.* Harley remained in the Farview State Hospital until October 4, 1988. *Id.*

On October 4, 1988, Harley's Mental Health Commitment was terminated, and he was ordered to serve the remainder of his sentence at SCI-Graterford. (Doc. 22, Commitment Order; Doc. 40, Criminal Docket Sheet). Harley was also given credit for the time he served as a patient at Farview State Hospital. *Id.*

On October 26, 1988, Harley was discharged from the Farview State Hospital and placed in SCI-Graterford. (Doc. 40, Admission/Discharge Record). His Admission/Discharge Record reflected all seven of Plaintiff's criminal charges, as well as his sentence of 33 to 90 years. *Id.* Upon admission to SCI-Graterford, Plaintiff's Sentence Status Summary reflected only three of the seven charges

and reported his sentence as 18 to 45 years. (Doc. 22, Sentence Status Summary).

*3 On April 6, 1989, Harley was transferred to the SCI-Camp Hill, and his Sentence Status Summary continued to reflect only three sentences and a total sentence of 18 to 45 years. *Id.* On March 8, 1994, Harley was sent to the SCI-Mahanoy, with the same Sentence Status Summary. *Id.* On June 10, 1997, Plaintiff was removed to SCI-Waymart. *Id.*

On September 1, 2001, Plaintiff entered SCI-Waymart's Sexual Offenders Treatment Program (SOTC). He claims that "at all relevant times hereto, plaintiff was and remains a SOTC student, misconduct free and program compliant." *Id.* at ¶ 14.

On May 1, 2002, pursuant to a request concerning the accuracy of the three charges contained in Plaintiff's Status Summary, the records department of SCI-Waymart was informed by the Philadelphia County District Attorney's Office that Harley was actually sentenced on March 17, 1987 to a total of seven charges. (Doc. 22, Ex. D, May 1, 2002, letter). Subsequently, in December, 2002, the SCI-Waymart records department received certified

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 6

Not Reported in F.Supp.2d, 2006 WL 709554 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

copies of the court commitment papers for the four additional crimes. (Doc. 22, Ex. E, Declaration of Joseph Chiumento, SCI-Waymart Records Supervisor, at ¶ 5).

On March 14, 2003, the Secretary of the Board of Probation and Parole wrote to the Sexual Offenders Assessment Board, advising them that Harley was scheduled for a parole interview with the Parole Board in November, 2004.

On March 31, 2003, "Version 2" of Harley's Sentence Status Summary was issued. (Doc. 1, Ex. C, Sentence Status Summary). It was "created to include additional sentences." *Id.*

On April 1, 2003, Plaintiff met with members of SCI-Waymart's Sex Offender Treatment Community Staff, which consisted of Defendants Carl Pucci, Kathy Manley, Joe Grillo and Laurie Hess. He states that "it was during this meeting that the Defendants gave plaintiff his first notice they had received a new Sentence Summary Status Report [ ] which indicated plaintiff's sentence was, again, 33-90 years." *Id.* at ¶ 15. Subsequent to the April, 2003 meeting, the Plaintiff contacted Judge Temin as to his sentence.

On May 12, 2003, Judge Temin's law clerk wrote to Plaintiff, enumerating his sentence as follows:

| | |
|---|---|
| CP 8604-1426 | Rape-72 to 180 months in a state correctional institution |
| CP 8604-1425 | Involuntary Deviate Sexual Intercourse-72 to 180 months in a |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 7

Not Reported in F.Supp.2d, 2006 WL 709554 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

|  |  |
|---|---|
|  | state correc tional institution consec utive to 8604-1426 |
| CP 8604-1422 | Robbe ry-72 to 180 months in a state correc tional institution consec utive to 8604-1425 |
| CP 8607-2113 | Rape-72 to 180 months in a state correc tional institution consec utive to 8604-1422 |
| CP 8607-2115 | Robbe ry-72 to 180 months in a state correc tional institution consec utive to 8607-2113 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 8

Not Reported in F.Supp.2d, 2006 WL 709554 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

| CP 8607-2119 | Aggravated Assault-18 to 120 months in a state correctional institution consecutive to 8607-2115 |
|---|---|
| CP 8607-2118 | Possession Instrument of Crime-18 to 60 months in a state correctional institution consecutive to 8607-2119 |

**\*4** (Doc. 1, Ex. A, May 12, 2003 letter). Plaintiff's total sentence was computed as 396 months to 1,080 months, or 33 years to 90 years. *Id.*

On June 16, 2003, Plaintiff retained Attorney Paul Paterson to "locate written verification/documentation which might evidence Judge Temin's intention to reduce [his] sentence." (Doc. 1, Ex. H, p. 2).

On March 12, 2004, Attorney Patterson wrote to Plaintiff concerning a telephone conversation he had with Mr. Vito Casella, Records Manager for SCI-Waymart. (Doc. 1, Ex. F). Based on Mr. Casella's explanation, Attorney Patterson explained the inaccuracy in recording Plaintiff's sentence as follows:
In November 1997 you applied for commutation. While processing your request for commutation it was discovered that your actual sentence was 33 years to 90 years. Mr. Casella insisted on receiving actual court documents that were sealed. You refused to accept photocopies and/or faxes regarding your sentence. He described for me a 3-year process where he wrote and/or called many people to verify your sentence. He noted that it was difficult to receive information from Philadelphia regarding a case and sentencing, which occurred in 1987. At any rate, Mr. Casella is now satisfied that your sentence has been correctly calculated at 33 to 90 years. This is based on actual court documents. Mr. Casella is certainly willing to consider any additional information that we may provide him. However, he needs actual court documents.

(Doc. 1, Ex. F). Attorney Paterson further suggested to Plaintiff that:It is possible that a clerical mistake initially caused your sentence to be calculated incorrectly. If this is the case I doubt there is any recourse. However, if there was a second court order changing your sentence from 33 years to 90 years to 18 years to 45 years we need to find that order. In this regard, please provide me with the information requested.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 709554 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*Id.*

In July, 2004, Plaintiff met with Mr. Dennis Burke, a representative of the Probation and Parole Sex Offender Assessment Board. He claims that Mr. Burke "advised plaintiff that while he was prepared to evaluate him pursuant to the Parole Board's request [ ], he was unable to complete the assessment procedure because plaintiff's institutional file now indicated his sentence had been recomputed to 33-90 years ... [and] it would now be premature to complete the assessment." (Doc. 1, p. 10, ¶ 24). However, he "informed plaintiff that, should his sentence discrepancy be favorably resolved, the assessment procedure could be completed at that time." *Id.*

On February 25, 2005, Plaintiff filed the instant action. He states that sometime between October 26, 1988 and October 25, 1989, he "received notification from the Clerk of Quarter Sessions of Philadelphia County Court indicating his sentence had been modified from the original 33-90 years, to 18-45 years." (Doc. 1, p. 6, ¶ 6). Plaintiff claims, however, that his "copy of the notification was confiscated by prison guards during the Camp Hill riots." *Id.*

**\*5** He further contends that "as a result of action and inactions of the defendants here complained of, he was deprived of his right to apply for parole at the earliest possible opportunity, which preclusion was in violation of his civil and constitutional rights. " (Doc. 1, p. 11, ¶ 27). He claims that Defendants, knew, or should have known that his sentence was incorrectly recorded and that they should have communicated this to him as soon as reasonably possible. *Id.* at ¶ 26. Plaintiff seeks compensatory and punitive damages, as well as to have this Court or, Judge Temin, declare his sentence is 18 to 45 years. (Doc. 1, p. 17).

*Discussion*

It is well-settled that prisoners cannot use § 1983 to challenge the fact or duration of their confinement or to seek immediate or speedier release. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36

L.Ed.2d 439 (1973). The United States Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). "The complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

Although Harley argues that his sentence has been commuted by Philadelphia County, there is no evidence of record of such commutation. Nor has Harley been able to produce any evidence of a commutation notice from Philadelphia County. Thus, because there is no indication in the record that there has been a prior adjudication pertaining to Harley's alleged unlawful sentence, he cannot, under *Heck,* maintain a cause of unlawful imprisonment until the basis for that imprisonment is rendered invalid.

Moreover, to the extent that Harley is attempting to raise a constitutional deprivation because he could not be assessed for parole in July, 2004, "[t]here is no constitutional right or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Conn. Bd. of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981)(quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)). While "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," *Sandin v. Conner,* 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Pennsylvania Supreme Court has long held that " a denial of parole does not implicate a constitutionally protected liberty interest." *Coady v. Vaughn,* 564 Pa. 604, 770 A.2d 287, 291 (Pa.2001); *see also Rogers v. Pa. Bd. of Prob. &*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 709554 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*Parole,* 555 Pa. 285, 724 A.2d 319, 322-23 (Pa.1999)(affirming Parole Board's discretion to grant or deny parole because "parole is a matter of grace and mercy shown to a prisoner who has demonstrated to the Parole Board's satisfaction his future ability to function as a law-abiding member of society upon release before the expiration of the prisoner's maximum sentence"). Accordingly, Defendants' motion for summary judgment will be granted. An appropriate Order will be entered.

### ORDER

**\*6** AND NOW, this 21st day of MARCH, 2006, for the reasons set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:
1. Defendants' motion for summary judgment (Doc. 19) is GRANTED. Judgment is hereby entered in favor of the Defendants and against the Plaintiff.
2. Plaintiff's motion for appointment of counsel (Doc. 37) is DISMISSED as moot.
3. The Clerk of Court is directed to CLOSE this case.
4. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

M.D.Pa.,2006.
Harley v. Pennsylvania Dept. of Corrections
Not Reported in F.Supp.2d, 2006 WL 709554 (M.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                          Page 1

Not Reported in A.2d, 1985 WL 552279 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Harrison v. Figueroa
Del.Super.,1985.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
C.L. Scott HARRISON
v.
Nivea R. Castro FIGUEROA
**No. Civ.A. 83C-MY-14.**

Submitted Jan. 11, 1985.
Decided March 6, 1985.

Gentlemen:
BIFFERATO, J.
**\*1** This is an action for damages brought by C.L.
Harrison (hereinafter "Harrison") against Nivea
Castro Figueroa (hereinafter "Defendant") for
malicious prosecution, abuse of process, and false
arrest.

Harrison owns a rental property at 617 North
Tatnall Street in Wilmington. In December, 1980,
Harrison rented the property without a lease to one
Willie Brown, presently age 50, and Miss Viola
Grandville, presently age 68, charging $120 per
month. At some point, DP & L turned off the gas
for the heat and hot water due to lack of payment.
Tenant Brown arranged with DP & L to restore
service; however, when the serviceman arrived to
restore the service, he refused because holes in the
chimney created a dangerous situation. The tenants
persevered without heat or hot water for over a
year, including the 1981-82 winter.

In September, 1982, Mr. Brown went to court to
fight eviction and to get the premises repaired, at
which time the judge told him to get a lawyer.
Brown approached the defendant, at the time a staff
attorney with Community Legal Aid Society, Inc.,
(CLASI) who agreed to represent Brown and
Grandville. On October 27, 1982, defendant, on
behalf of her clients, filed a complaint and request

for forthwith summons to compel Harrison to repair
the rental property, and to secure for her client rent
abatement due to the denial of essential services
necessary to the safe habitation of the rental unit.

The constables served Harrison on October 28,
1982 at approximately 7:00 a.m. The constables,
pursuant to the judge's instruction regarding the
forthwith summons, brought Harrison down to
Justice of the Peace Court # 13 (hereinafter "J.P.
Court"). He remained at J.P. Court until defendant
arrived at approximately 9:30 a.m. A hearing was
begun, but after an "expression of outrage" by
Harrison's counsel, it was rescheduled. After being
rescheduled several times, the case was heard by a
six-person jury on February 23, 1983. The jury
awarded defendant's clients (defendant was no
longer with CLASI so another CLASI staff attorney
represented Brown and Grandville at trial) Brown
and Grandville $889.50 in rent abatement. Harrison
prevailed on a counterclaim. It is interesting to note
that the hot water heater was replaced by Harrison
several days after the Brown/Grandville suit was
filed, and that Brown patched up the chimney,
himself.

Now before the Court is defendant's motion for
summary judgment.

In order to prevail on her motion for summary
judgment, defendant must demonstrate that, taking
the evidence in the light most favorable to plaintiff,
she is entitled to judgment as a matter of law. *Oliver
B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,*
Del.Super., 312 A.2d 322 (1973).

Each cause of action will be addressed separately:

*Malicious Prosecution*

The elements of malicious prosecution are that:
(1) There must have been a prior institution or
continuation of some regular judicial proceedings

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"C"

Not Reported in A.2d                                                                                  Page 2

Not Reported in A.2d, 1985 WL 552279 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

against the plaintiff in this action for malicious prosecution.

**\*2** (2) Such former proceedings must have been by, or at the instance of the defendant in this action for malicious prosecution.

(3) The former proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution.

(4) There must have been malice in instituting the former proceedings.

(5) There must have been want of probable cause for the institution of the former proceedings.

(6) There must have been injury or damage resulting to the plaintiff from the former proceedings.

*Stidham v. Diamond State Brewery,* Super.Ct., 21 A.2d 283 at 284 (1941).

Harrison has not, and cannot, demonstrate that the former proceeding was terminated in his favor. The February 25, 1983 order of the J.P. Court is irrefutable evidence that Harrison lost in the prior proceedings. Harrison attempts to distinguish the forthwith summons from the proceeding on the merits. This is inappropriate. Harrison's argument, if anything, goes to the abuse of process claim and not the malicious prosecution claim.[FN1]

> FN1. The Court has read the memoranda written by Chief Magistrate Norman Barron and submitted by Harrison but is not considering it in the resolution of the motion presently before the Court. The memo was written over a year after the incident, and is immaterial and irrelevant to this proceeding. Delaware Rule of Evidence 402, 407.

### False Imprisonment

False imprisonment is defined as the unlawful restraint by one person of the physical liberty of another. 32 Am.Jur.2d False Imprisonment § 1. In other words, the elements of the tort are (a) restraint which is both (b) unlawful and (c) against one's will. *Id.* False Imprisonment § 5.

Harrison has not submitted, nor could the Court find, any authority or facts to support his position that his detention was unlawful. Instead, he relies on the aforementioned Barron directive from which he infers that Barron concluded that detention pursuant to a forthwith summons is illegal. The Barron directive does not conclude that such an arrest is unlawful; rather, it merely changes the procedure utilized when a forthwith summons is issued.

This Court finds no evidence that the arrest, pursuant to a forthwith summons, is unlawful. Defendant has met her burden with respect to the claim of false imprisonment.

### Abuse of Process

The elements of the tort of abuse of process are: (a) an ulterior purpose and (b) a willful act in the use of process not proper in the regular conduct of the proceedings. *Nix v. Sawyer,* Del.Super ., 466 A.2d 407, 412 (1983), quoting *Unit, Inc. v. Kentucky Fried Chicken Corporation,* Del.Super., 304 A.2d 320 (1973). *See* Prosser and Keeton on Torts § 121 (5th ed., 1984).

Harrison's evidence of ulterior motive is insufficient to create a question of fact. The record is barren of facts to show that the use of a forthwith summons was for any purpose other than compelling Harrison's attendance at the hearing. Harrison concedes in his brief that had he been served with a mere summons, he would not have been compelled to come to court to defend his case. In such a situation, the litigation would have been dragged out, thereby denying Brown and Grandville essential services. This was precisely what defendant sought to avoid by use of the forthwith summons.

**\*3** The record is clear that defendant's motive in requesting a forthwith summons was to secure Harrison's attendance in order to promptly restore essential services to his tenants. There is not a single shred of evidence that defendant had another improper motive for requesting such service.

Defendant's motion for summary judgment is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 3

Not Reported in A.2d, 1985 WL 552279 (Del.Super.)
**(Cite as: Not Reported in A.2d)**


GRANTED. IT IS SO ORDERED.

Del.Super.,1985.
Harrison v. Figueroa
Not Reported in A.2d, 1985 WL 552279
(Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

864 A.2d 929

Page 1

864 A.2d 929, 2004 WL 2850086 (Del.Supr.)
**(Cite as: 864 A.2d 929)**

**H**
State of Delaware Department of Health and Social
Services v. Sheppard
Del.Supr.,2004.
(The decision of the Court is referenced in the
Atlantic Reporter in a 'Table of Decisions Without
Published Opinions.')
Supreme Court of Delaware.
STATE OF DELAWARE DEPARTMENT OF
HEALTH AND SOCIAL SERVICES, Delaware
Division of Alcoholism Drug Abuse and Drug
Abuse and Mental Health, Delaware Psychiatric
Center, Vincent P. Meconi, Renata J. Henry,
Michael Talmo and Diane Bigham, PH.D.,
Defendants Below, Appellants,
v.
Laron SHEPPARD, Individually, and as
Administrator of the Estate of Camellia N.
Washington, and Laron Sheppard, Individually and
as next friend of Cameron Sheppard, a minor,
Plaintiff Below, Appellee.
**No. 176, 2004.**

Submitted Nov. 17, 2004.
Decided Dec. 10, 2004.

**Background:** Estate of suicide victim brought
action against state psychiatric facility, alleging
various claims, including gross negligence and civil
rights violations. State filed motion to dismiss. The
Superior Court, New Castle County, denied State's
motion and certified questions.

**Holdings:** The Supreme Court held that:

(1) sovereign immunity was not waived for claim of
gross negligence, given that there was no insurance
in place to cover the loss, and

(2) § 1983 action for monetary damages may not be
maintained against the State or its agencies.

Affirmed.
West Headnotes
**[1] Health 198H ⟜770**

198H Health
    198HV Malpractice, Negligence, or Breach of
Duty
        198HV(E) Defenses
            198Hk770 k. Official or Governmental
Immunity.
        (Formerly 360k112.2(4))
Sovereign immunity was not waived for claim of
gross negligence against State arising out of mental
health patient's suicide while in the care of State
psychiatric facility, where there was no insurance in
place to cover the loss. 10 Del.C. § 4001; 18
Del.C. § 6511.

**[2] Civil Rights 78 ⟜1344**

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and
Other Governmental Bodies
            78k1344 k. States and Territories and
Their Agencies and Instrumentalities, in General.
Most Cited Cases
Section 1983 action for money damages may not be
maintained against a state or its agencies, because
neither a state nor its agencies are considered "
persons" for the purpose of such an action. 42
U.S.C.A. § 1983.

Court Below: Superior Court of the State of
Delaware in and for New Castle County, C.A. No.
03C-01-096.

Before STEELE, Chief Justice, HOLLAND and
BERGER, Justices.

*ORDER*

**\*1** This 10th day of December 2004, it appears to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

864 A.2d 929, 2004 WL 2850086 (Del.Supr.)
**(Cite as: 864 A.2d 929)**

the Court that:

1. We granted this interlocutory appeal pursuant to Supreme Court Rule 42 [FN1] to determine the following two questions certified by the Superior Court:

> FN1. *DHSS v. Sheppard,* Del.Supr., No. 176, 2004, Berger, J. (June 3, 2004) (ORDER).

(1) Whether 10 *Del. C.* § 4001 constitutes a waiver of sovereign immunity in this case involving allegations of gross negligence where the State has not provided insurance coverage; and
(2) Whether an action for money damages may be maintained against the State and its agencies pursuant to 42 U.S.C. § 1983.[FN2]

> FN2. *Sheppard v. DHSS,* Del.Super., C.A. No. 03C-01-096, (May 13, 2004) (ORDER).

After careful review, we conclude that 10 *Del. C.* § 4001, part of the State Tort Claims Act, does not constitute a waiver of sovereign immunity where the State has not provided insurance coverage, even where a party alleges gross negligence. We further conclude that an action for monetary damages may not be maintained against the State or its agencies pursuant to 41 U.S.C. § 1983.

2. The underlying action stems from the suicide of Camellia Washington, an individual in the care of the Delaware Psychiatric Center. Laron Sheppard, acting in both his individual capacity and as the administrator of Washington's estate, instituted this action, alleging gross negligence, civil rights violations, and various other theories of liability. The State filed a motion to dismiss and asserted that sovereign immunity barred the claims as a matter of law. In December 2003, a Superior Court judge denied the State's motion. This certification followed.

3. The Court must review certified questions in the

context in which they arise.[FN3] We review questions concerning the applicability or construction of a statute *de novo*.[FN4]

> FN3. *State v. Anderson,* 697 A.2d 379, 382 (Del.1997), *citing Rales v. Blasband,* 634 A.2d 927, 931 (Del.1993).

> FN4. *State v. Lewis,* 797 A.2d 1198, 1199 (Del.2002).

4. In *Pauley v. Reinhoehl,* we articulated a two-prong test to be used in determining whether sovereign immunity would bar an action under Delaware law. [FN5] Under *Pauley,* a plaintiff must show that "(1) the State has waived the defense of sovereign immunity for the actions mentioned in the complaint; and (2) the State Tort Claims Act does not bar the action." [FN6] The defense of sovereign immunity only can be waived by an act of the General Assembly that expressly manifests an intention to do so.[FN7] An example of an express intention to waive sovereign immunity can be found in 18 *Del. C.* § 6511, which waives sovereign immunity where actions complained of are covered by the state insurance program.[FN8]

> FN5. 848 A.2d 569 (Del.2004).

> FN6. *Id.* at 573 (citation omitted).

> FN7. Del. Const. art I § 9; *Pauley,* 848 A.2d at 573, *citing Shellhorn & Hill, Inc. v. State,* 187 A.2d 71, 74 (Del.1962).

> FN8. *Pauley,* 848 A.2d at 573, *citing Doe v. Cates,* 499 A.2d 1175, 1177 (Del.1985).

[1] 5. Grossly negligent acts *per se* and the State Tort Claims comes into play only *after* an express intent to waive sovereign immunity has been identified. An insurance-dependent provision, 18 *Del. C.* § 6511 does not waive sovereign immunity under these circumstances because there was no insurance in place to cover the alleged loss. Similarly, the Mental-Health Patients' Bill of Rights does not expressly waive sovereign immunity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

864 A.2d 929                                                                                                          Page 3

864 A.2d 929, 2004 WL 2850086 (Del.Supr.)
**(Cite as: 864 A.2d 929)**

because the statute does not contain any language
that expresses that intention explicitly or implicitly.
FN9

> FN9. *See* 16 *Del. C.* § 5161-5162.

*2 6. We, therefore, answer "no" to the first
certified question.

[2] 7. An action for money damages may not be
maintained against a state or its agencies pursuant to
42 U.S.C § 1983 because neither a state nor its
agencies are considered "persons" for the purpose
of such an action.FN10

> FN10. *Lapides v. Bd. of Regents,* 535 U.S.
> 613, 617, 122 S.Ct. 1640, 152 L.Ed.2d
> 806 (2002), *citing Will v. Michigan Dep't
> of State Police,* 491 U.S. 58, 66, 109 S.Ct.
> 2304, 105 L.Ed.2d 45 (1989); *see also
> Neeley v. Samis,* 183 F.Supp.2d 672, 678
> (D.Del.2002) (reiterating that states are not
> persons for the purpose of § 1983 claims
> for monetary damages).

8. We, therefore, answer "no" to the second
certified question.

NOW, THEREFORE, IT IS ORDERED that both
certified questions of law are answered in the
negative.

Del.Supr.,2004.
State of Delaware Department of Health and Social
Services v. Sheppard
864 A.2d 929, 2004 WL 2850086 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.