IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JEROME K. HAMILTON, a/k/a   :
ELOHIM CHEIKH AHMED,    :
             :
    Plaintiff,     :
             :  C.A. No. 04-1422 (GMS)
   v.        :
             :  JURY TRIAL DEMANDED
CATHY L. GUESSFORD, REBECCA  :
MCBRIDE, ROBERT F. SNYDER, THOMAS :
L. CARROLL, and STANLEY W. TAYLOR, :
JR.

Defendants

## PLAINTIFF'S MOTION TO STRICK DEFENDANTS' DESIGNATION OF EXPERT WITNESS

The Plaintiff, pursuant to provisions of Fed. R. Civ. P 37 (c)(1), moves this Court to strike the designation of defendants expert witness, Richard S. Gebelein, Esquire, a retired Superior Court Judge. The bases of this Motion are as follows:

1. On September 20, 2006 the Court entered a Scheduling Order which had been filed by the Plaintiff (Dk. 51). That order provided that all discovery in this matter was to be completed on or before April 30, 2007.

2. On April 25, 2007 the parties entered into a stipulation extending discovery from deadline of April 30, 2007 until May 11, 2007 (Dk. 83). That Stipulation was approved by the Court on April 30, 2007. That Stipulation (attached as exhibit No. 1) was done solely for the purpose of alleviating the discovery scheduling deadline in order to schedule final depositions in this matter (including the plaintiff's deposition). No mention, in the stated reason for the extension, was reference made for additional time to designate expert witnesses.

3. At no time in this litigation did the defendants ever suggest to the plaintiffs, either before the April 30, 2007 deadline, or in discussing the need for the extension discovery

deadline, at the plaintiff's request, of their need for additional time for the defendants to provide expert testimony.

4.    The plaintiff's deposition was scheduled for May 11, 2007.

5.    The plaintiff's deposition, on May 11, 2007, concluded an approximately 2:35 p.m. Following the close of the plaintiff's deposition defense counsel handed to the plaintiff, in a sealed envelope, a proposed expert report of Richard S. Gebelein, Esquire.  Plaintiff had been provided no notice whatsoever that defendants intended designating expert testimony in this matter.

6.    The expert report proffered by the defendant's seems to set a standard of care for what was known by the sentencing clerks in the Departments of Corrections, some of which are defendants in this matter.  The depositions of the Department of Corrections sentencing clerks in this case were taken on March 1, 2007 (defendant, Carol Guessford), April 5, 2007 (Debera O'Hanlon), April 13, 2007 (Rebecca McBride).  Those depositions where all taken within 90 days of the scheduled close of discovery, April 30, 2007 and the extended close discovery date of May 11, 2007.

7.    The plaintiff in this matter has propounded interrogatories to the defendant including interrogatories seeking the identities of any experts expected to be called at trial or experts consulted in anticipation of trial (Interrogatories Nos. 5 & 6  (attached hereto as Exhibit No. 2). In response to that discovery the defendants responded that they had not retained any experts.

8. The scheduling order in this matter did not provide any specific deadlines for expert disclosure. The provisions of Fed.R.CivP. 26 (a)(2)(C) provide:

>    "In the absence of other directions from the court or
>     stipulation by the parties, the disclosures (referring to
>     expert discloures) shall be made 90 days before
>     the trial date or the date the case is to be ready for trial...".
>     Fed.R.Civ.P. 26(a)(2)(C).

Thus , Rule 26 (a)(2)(C) requires, where no expert discovery deadline has be set, the expert disclosures shall be made within 90 days of time the matter is ready for trial. That langue has been interpreted to mean that the 90 default rule applies to 90 days prior to the close of discovery. *RLJC Enterprises, Inc. v. Professional B. Benefit E Trust, Inc. 2005 WL 3019398 (N.D.Ill. 2005)* (a copy which is attached hereto as Exhibit No. 3).

9.   The present situation is not unlike that presented in *Cuffee v. Dover Wipes Company 334 F.Supp. 2d 565 (D.Del. 2004)*. There, the Plaintiff filed an expert report after a deadline set in the scheduling order for the disclosure of expert witnesses, but prior to the dispositive motion deadline, on May 14, 2004. That disclosure, on May 14, 2004, was approximately five (5) months prior to trial. Nonetheless, that Court found that the defendant disclosure was late, and barred the expert testimony. In the present case the defendants waited until the proverbial last minute to designate an expert witness, approximately two and one-half (2 ½) hours prior to the close of discovery. The designation of an expert witness was four and one-half (4 ½) months prior to the scheduled October 1, 2007 trial, a shorter period than was the bases for striking the expert witness in *Cuffe, supra.*

10.   When a party offers expert testimony late in the litigation an adequate rationale must be given. In Re Armstrong Industries, Inc. 348 B.R. 111. n.19 (D.Del. 2006). Plaintiffs have provided no rationale whatsoever for the lateness of the designation of expert testimony. In this case, the defendants' expert is an employee by the Department of Justice (Chief Deputy Attorney General), which represents the defendants. Thus, there can be no claim that potential expert witness was not available to the defendants.

11.   Agreement by the parties to extend discovery is to bring closure to open discovery matters, and not to bring new discovery issues forward. Praxair, Inc. v. ATML, Inc., 231 F.R.D.

457, 464 (D.Del. 2005) (striking additional expert testimony). The stipulation by the parties to extend the discovery deadline until May 11, 2007, as explained in the stipulation, was done to provide for contemplated depositions to be conducted. It was not done for the purpose of raising new discovery issues in the form of expert testimony.

12.    A late production of new evidence, invoking a new theory, at the end of discovery has been considered prejudicial. *Matsushita Elec. Industrial Co., LTD v. Cinram International, Inc.* 299 F.Supp.2d 348, 366 (D.Del. 2004). Here, the new expert evidence proposed by the defendants will involve entirely new discovery concerning the "standard of care" of sentencing clerks of the Department of Corrections. It will not only require the deposition of defendants' expert, but the obtaining of expert testimony on behalf of the plaintiff, and again depositions of that expert witness. Although the defendants have eschewed the expert's report in support of their motion for summary judgment, based in part upon qualified immunity, it is clear that proposed expert testimony is directed to that issue. If the court denies summary judgment upon the defendants qualified immunity defense, the defendants will apparently try to reopen that defense in light of the late expert testimony used in support that defense. However, such an attempt might well be futile, since the issue of qualified immunity one a legal issue for the Court. *Sharar v. Felsing 128 F.3d 810, 827-828 (3rd Cir. 1997), Schieber v. City of Philadelphia 320 F.3d 409, 426 (3rd Cir. 2003)( Sleet J., dissenting).*

13. It is clear that the plaintiff whether has been prejudiced by the last designation of an expert witness is the keystone to any discussion as to whether or not late produced expert testimony can be admitted. *In re Paoli Railroad Yard PCB Litigation_ 35 F. 3d 717, 791-792 (3rd Cir. 1994).* As shown above, the position of the sentencing clerks involved in this matter occurred after the 90 day deadline imposed by Rule 26 (a) (2) (C). In taking those depositions of

those clerks plaintiff was not only unaware of defendants' expert opinions, he was never put on notice that the defendants would use expert testimony as to the "standard of care" of those witnesses. If the defendants had followed the 90 rule, contained in Rule 26, the plaintiff's depositions of the defendants, Guessford and McBride, and the third sentencing clerk in this matter, O'Hanlon, would have been more expansive and would have tested the expert opinions of the defendants' expert. Thus, if the defendant expert is permitted to appear in this matter, then the plaintiff would not only require the opportunity to depose the defendants expert, designate a plaintiff's expert, but also to redepose the sentencing clerks that have already been deposed.

WHEREFORE, the plaintiff requests this Court to strike the designated expert testimony of the defendants expert, Richard S. Gebelein, Esquire, as having come too late in this litigation, or to impose such other measures, under Fed.R.Civ.P. 37 (c)(1) as the Court deems appropriate.


ABER, GOLDLUST, BAKER & OVER


            /s/ Gary W. Aber
GARY W. ABER (DSB #754)
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE  19899
302-472-4900
DATED:  May 25, 2007                    Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the attached pleading was filed via electronic filing

on May25, 2007 was served on the following counsel:

> Eileen Kelly, Esquire
> Department of Justice
> 820 N. French Street, 6th Floor
> Wilmington, DE  19801


> _____ /s/ Leilani Mayle _____
> Leilani Mayle
> Secretary to Gary W. Aber, Esquire

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JEROME K. HAMILTON, a/k/a :
ELOHIM CHEIKH AHMED, :
:
Plaintiff, :
:                C.A. No. 04-1422 (GMS)
v. :
:                JURY TRIAL DEMANDED
CATHY L. GUESSFORD, REBECCA :
MCBRIDE, ROBERT F. SNYDER, THOMAS :
L. CARROLL, and STANLEY W. TAYLOR, :
JR. :

Defendants

<u>CERTIFICATION PURSUANT TO L. R. 7.1.1</u>

The plaintiff in the above captioned matter, through his counsel has discussed the

designation of the defendants expert witness with defense counsel, has been unable to resolve

plaintiff's objection to such testimony.


ABER, GOLDLUST, BAKER & OVER


_____/s/ Gary W. Aber_____
GARY W. ABER (DSB #754)
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE  19899
302-472-4900
DATED:  May 25, 2007          Attorney for Plaintiff

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JEROME K. HAMILTON, a/k/a          :
ELOHIM CHEIKH AHMED,               :
                                   :
            Plaintiff,             :
                                   :        C.A. No. 04-1422 (GMS)
        v.                         :
                                   :        JURY TRIAL DEMANDED
CATHY L. GUESSFORD, REBECCA        :
MCBRIDE, ROBERT F. SNYDER, THOMAS  :
L. CARROLL, and STANLEY W. TAYLOR, :
JR.                                :

            Defendants

## SCHEDULING ORDER

This ____ day of _____, 2006, the Court having conducted an

initial Rule 16 scheduling and planning conference pursuant to Local Rule 16.2(a) on

August 31, 2006, and the parties having determined after discussion that the

matter cannot be resolved at this juncture by settlement, voluntary mediation, or binding

arbitration;

IT IS ORDERED that:

1.    **Rule 26(a)(1) Initial Disclosures**. Unless otherwise agreed to by the

parties, the parties shall make their initial disclosures pursuant to Federal Rule of Civil

Procedure 26(a)(1)  on or before September 30, 2006.

2.    **Joinder of other Parties and Amendment of Pleadings**. All motions to

join other parties, and to amend or supplement the pleadings shall be filed on or before

October 16, 2006.

3. Discovery.   All discovery in this case shall be initiated so that it will be completed on or before April 30, 2007.

a.      Discovery and Scheduling Matters:  Should counsel find they are unable to resolve a discovery or scheduling matter, the party seeking the relief shall contact chambers at (302) 573-6470 to schedule a telephone conference.  Not less than forty-eight hours prior to the teleconference, the parties shall file with the court, via electronic means (CM/ECF), a joint, non-argumentative letter agenda not to exceed two(2) pages outlining the issue(s) in dispute.  A sample letter can be located on this court's website at www.ded.uscourts.gov.   Should the court find further briefing necessary upon conclusion of the telephone conference, unless otherwise directed, the party seeking relief shall file with the court a **TWO PAGE LETTER**, exclusive of exhibits, describing the issues in contention. The responding party shall file within five (5) days from the date of service of the opening letter an answering letter of no more than **TWO PAGES.** The party seeking relief may then file a reply letter of no more than **TWO PAGES** within three (3) days from the date of service of the answering letter.

4.      **Confidential Information and Papers filed under Seal.** Should counsel find it would be necessary to apply to the court for a protective order specifying terms and conditions for the disclosure of confidential information, they should confer and attempt to reach an agreement on a proposed form or order and submit it to the court within ten (10) days from the date of this order.  When filing papers under seal, counsel should deliver to the Clerk an original and two copies of the papers.

**If, after making a diligent effort, the parties are unable to agree on the contents of the joint, proposed protective order, then they shall follow the dispute**

resolution process outlined in paragraph 3(a).

5.      **Settlement Conference.** Pursuant to 28 U.S.C. § 636, this matter is referred to the United States Magistrate for the purpose of exploring the possibility of a settlement. The Magistrate Judge will schedule a settlement conference with counsel and their clients.

6.      **Case Dispositive Motions.** All case dispositive motions, and an opening brief, and affidavits, if any, in support of the motion shall be served and filed on or before May 14, 2007. Briefing will be presented pursuant to the Court's Local Rules, unless the parties agree to an alternative briefing schedule. Any such agreement shall be in writing and filed with the Court for the Court's approval. Any request for extensions of time as set forth in this Scheduling Order must be accompanied by an explanation or your request will be denied.

7.      **Applications by Motion.** Except as otherwise specified herein, any application to the Court shall be by written motion filed with the Clerk. Unless otherwise requested by the Court, counsel shall not deliver copies of papers or correspondence to Chambers. Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

8.      **Pretrial Conference.** On September 11, 2007, the Court will hold a Final Pretrial Conference in Chambers with counsel beginning at 10:00 a.m. Unless otherwise ordered by the Court the parties should assume the filing of the pretrial order, which satisfies the pretrial disclosure requirement of Federal Rule of Civil Procedure 26(a)(3). The parties shall file with the court Joint Proposed Final Pretrial Order on August 20, 2007, with the information required by the form of Final Pretrial Order.

9.    Trial. This matter is scheduled for a two (2) day jury trial beginning at 9:00 a.m. on October 1, 2007.

10.    **Scheduling:**  The parties shall contact chambers, at (302) 573-6470, only in situations where scheduling relief is sought and only then when ALL participating counsel is on the line for the purposes of selecting a new date.

THE HONORABLE GREGORY M. SLEET

EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JEROME K. HAMILTON, a.k.a.,                    )
CHEIKH AHMED ELOHIM,                           )
                                               )
                Plainitff,                     )
                                               )
        v.                                     )    C.A. No. 04-1422-GMS
                                               )
CATHY L. GUESSFORD, REBECCA                     )
MCBRIDE, ROBERT F. SNYDER,                     )
THOMAS L. CARROLL, and                          )
STANLEY W. TAYLOR, Jr.                          )
                                               )
                                               )
                Defendants.                    )


## DEFENDANTS' RESPONSE TO
## PLAINTIFF'S SECOND SET OF INTERROGATORIES

Defendants Cathy L. Guessford (Escherich), Rebecca L. McBride, Robert F. Snyder, Thomas L. Carroll, and Stanley W. Taylor ("Defendants") hereby respond to Plaintiff's Second Set of Interrogatories ("Interrogatories"):

### GENERAL OBJECTIONS

1.      Defendants object to the Interrogatories to the extent that they seek information or documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

2.      Defendants object to the Interrogatories to the extent that they purport to require supplementation of these responses beyond that required by Federal Rule of Civil Procedure 26(e).

3.      Defendants object to the Interrogatories to the extent that they purport to

Department of Correction ("DOC") employees. To the extent that DOC employees can be located, they can be contacted through undersigned counsel. Without waiving these objections, pursuant to Fed. R. Civ. P. 34, see the documents produced by Defendants in response to Plaintiff's Second Request for Production of Documents.

2.    Give the names, last known addresses, and telephone numbers of all persons other than those listed in the answers to Interrogatory No. 2 who have knowledge of the facts concerning how the events in the complaint occurred.

**RESPONSE:** See Response to Interrogatory No. 1.

3.    Give the names, last known addresses, and telephone numbers of all other persons who have knowledge of any facts alleged in the pleadings other than those persons given in the answers to Interrogatories 1 and 2.

**RESPONSE:**    See Response to Interrogatory No. 1.

4.    Identify any report, memorandum, or resume prepared by you or anyone acting on your behalf but not necessarily limited to any investigation, or other person pertaining to any of the facts alleged or referred to in the pleadings, give the date of each such matter in writing, whether or not the writing was prepared by you, or is a writing of why you have only knowledge, or your attorney has knowledge.

**RESPONSE:** Objection. This interrogatory is overly broad and unduly burdensome. Without waiving this objection, pursuant to Fed. R. Civ. P. 34, see the documents produced by Defendants in response to Plaintiff's Second Request for Production of Documents.

5.    State the name and present or last known address of each person who you expect to call as an expert witness at the trial and, as to each person named, state the

subject matter on which the witness is expected to testify, the substance of the matters to

which the witness is expected to testify, the substance of the opinions to which the

witness is expected to testify, and a summary of the grounds for each witnesses' opinion,

identifying the dates of any reports prepared by that witness.

**RESPONSE:** Defendants have not yet retained or consulted any experts but reserve the

right to do so and will update this Response as required by Fed. R. Civ. P. 26.

6.    State the name and present or last known address of each person who has

been consulted as an expert in anticipation of litigation or preparation for trial, whether or

not that person is expected to be called as a witness by you at trial.

**RESPONSE:** See Response to Interrogatory No. 5.

7.    Please state each date that the plaintiff's sentence was reviewed and

calculated, and for each date, give the name of the person who made the review, the

person who made the calculation for the release date, identify by date, author, and

intended recipient each and every document relied upon by the person in making the

calculation, and pursuant to Rule 34, *Federal Rules of Civil Procedure,* please attach

copies of all such documents to these answers to interrogatories.

**RESPONSE:** Objection. This interrogatory is overly broad and unduly burdensome.

Further objection that Defendants Taylor, Carroll and Snyder did not review or calculate

Plaintiff's sentence. Further objection that Defendants Guessford and McBride did not

review Plaintiff's sentence; rather, they calculated his release date based on various court

orders pertaining to Plaintiff's sentencing. Without waiving these objections, pursuant to

Fed. R. Civ. P. 34, see the documents produced by Defendants in response to Plaintiff's

Second Request for Production of Documents. Plaintiff's sentence status reports

relates to, pertains, or mention such error, and pursuant to Rule 34, *Federal Rules of Civil Procedure,* please attach copies of all such documents to these answers to interrogatories.

**RESPONSE:**  Objection.  This Interrogatory is overly broad and unduly burdensome, seeks information not relevant to Plaintiff's claims and is not reasonably calculated to lead to the discovery of admissible evidence.  Further objection that this Interrogatory seeks production of information protected from discovery by 11 *Del. C.* § 4322.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Eileen Kelly, I.D. No. 2884
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th fl.
Wilmington, DE 19801
(302) 577-8400
eileen.kelly@state.de.us
Attorney for Defendants

Dated: September 25, 2006

VERIFICATION AS TO ANSWERS:

I hereby declare under penalty of perjury that the attached Response to Plaintiff's Second Set of Interrogatories is true and correct.

Robert F. Snyder

VERIFICATION AS TO ANSWERS:

I hereby declare under penalty of perjury that the attached Response to Plaintiff's

Second Set of Interrogatories is true and correct.

Warden Thomas L. Carroll

VERIFICATION AS TO ANSWERS:

I hereby declare under penalty of perjury that the attached Response to Plaintiff's Second Set of Interrogatories is true and correct.

Stanley W. Taylor, Jr.

VERIFICATION AS TO ANSWERS:

I hereby declare under penalty of perjury that the attached Response to Plaintiff's Second Set of Interrogatories is true and correct.

Rebecca McBride

VERIFICATION AS TO ANSWERS:

I hereby declare under penalty of perjury that the attached Response to Plaintiff's Second Set of Interrogatories is true and correct.

*Cathy L. Escherich*

Cathy L. Guessford (Escherich)

EXHIBIT 3

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1

Not Reported in F.Supp.2d, 2005 WL 3019398 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

**H**
RLJCS Enterprises, Inc. v. Professional Benefit
Trust, Inc.
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
RLJCS ENTERPRISES, INC., et al., Plaintiffs,
v.
PROFESSIONAL BENEFIT TRUST, INC., et al.,
Defendants.
No. 03 C 6080.

Nov. 8, 2005.

Paul Ethan Slater, Sperling & Slater, Chicago, IL,
Richard Lyle Coffman, Richard Lyle Coffman, Esq.
Richard L. Coffman P.C., Beaumont, TX, for
Plaintiffs.
Columbus R. Gangemi, Jr., Timothy John Rooney,
Romy Elisabeth Carr, Timothy John Rooney,
Winston & Strawn, Chicago, IL, Andrew A.
Malahowski, Franczek Sullivan, P.C., Chicago, IL,
Cheryl Tama Oblander, Winston & Strawn,
Chicago, IL, Douglas Spears Robson, Chicago, IL,
Richard D. Hart, Handler, Thayer, & Duggan LLC,
Chicago, IL, David Joseph Novotny, Michael Brian
Galibois, Chittenden, Murday & Novotny, LLC,
Chicago, IL, Stephen James Jorden, Jorden Burt,
LLP., Washington, DC, Mark E. Schmidtke,
Schmidtke Hoeppner Consultants LLP, Valparaiso,
IN, F. Joseph Jaskowiak, Schmidtke Hoeppner
Consultants LLP, Chicago, IL, Robert L. Clark,
Hoeppner, Wagner and Evans, Valparaiso, IN, for
Defendants.

*MEMORANDUM OPINION*
GRADY, J.
**\*1** Before the court is defendants' motion to strike
plaintiffs' expert reports. For the reasons stated
below, the motion is granted in part and denied in
part.

*BACKGROUND*

We will repeat here a brief summary of the alleged
facts from an earlier opinion:
Plaintiffs are former employer and employee
participants in a multiple-employer benefits trust (“
the Trust”). The employers participated in the Trust
for the sole purpose of providing death benefits for
their participating employees. These death benefits
were funded by life insurance policies that were
purchased by the Trust with contributions made by
the employers. The Trust was designed to be a
qualifying trust under section 419A(f)(6) of the
Internal Revenue Code, which allows employers to
realize a tax deduction for contributions made to
certain employee benefit plans. *See* I.R.C. §
419A(f)(6).
At the heart of this dispute are life insurance
policies purchased by the Trust from Canada Life
and Sun Life on behalf of participating employees.
When these policies were issued, Canada Life and
Sun Life were both mutual insurance companies, or,
“insurer[s] whose policyholders are its owners, as
opposed to a stock insurance company owned by
outside shareholders.” Black's Law Dictionary 1041
(7th ed.1999). However, Canada Life and Sun Life,
in 1999 and 2000 respectively, “demutualized,”
which is “[t]he process of converting a mutual
insurance company (which is owned by its
policyholders) to a stock insurance company (which
is owned by outside shareholders)....” *Id.* at 445.
As a result of these demutualizations, the Trust
received shares of Canada Life and Sun Life stock
(together, “the Demutualized Stock”).[FN1] Then, in
or around September 2000, the trustee of the Trust
liquidated the Demutualized Stock for
approximately $5,000,000, which the Trust has
retained. Effective December 31, 2002, plaintiffs
terminated their participation in the Trust. Upon
their withdrawal, the Trust distributed to the
participating employees their respective Canada
Life and Sun Life insurance policies and their *pro
rata* share of other related Trust assets. The
distribution, however, did not include any of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2005 WL 3019398 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

sales proceeds from the Demutualized Stock.

> FN1. The parties dispute whether the shares of Demutualized Stock were " attributable" to any particular insurance policy or participating employer or employee. *Compare Sec. Am. Compl.,* p. 26, ¶ 4.11 ("Canada Life distributed approximately 116,626 shares of Canada Life Stock to the Trust (rather than directly to the Plaintiffs) attributable to the Canada Life insurance policies ... [listing insured employees and corresponding share distribution]") *with Defs.' Counterclaim,* p. 13, ¶ 62 ("The Demutualized Stock ... was not attributed or attributable to any particular insurance policy or any particular Sponsoring Employer or Participant Employee.")

*RLJCS Enterprises, Inc. v. Professional Benefit Trust, Inc.,* No. 03 C 6080, 2004 WL 2033067, at *1 (N.D.Ill. Sept.2, 2004).

On these alleged facts, plaintiffs filed a 73-page, sixteen count complaint against the Trust and several related entities and individuals alleging violations of RICO, 18 U.S.C. §§ 1961, *et seq* ., and ERISA, 29 U.S.C. §§ 1001, *et seq.,* as well as various state law breach of contract, fiduciary duty and fraud-based claims. The nub of the complaint is that the participating employees had an ownership interest in the Demutualized Stock and that defendants unlawfully deprived the employees of that interest when their *pro rata* shares of the sales proceeds were not included in their termination distributions.

**\*2** Defendants filed a counterclaim seeking a declaratory judgment that the Trust is the proper owner of the Demutualized Stock and related sales proceeds. [FN2] Along with the counterclaim, defendants filed a motion to stay all proceedings on the complaint pending decision on the counterclaim. Although we denied defendants' motion, we agreed with its premise-since much (if not all) of the complaint hinges on the question of stock

ownership, isolating that issue for an early resolution was the most efficient way to proceed with the case. *See RLJCS Enterprises,* 2004 WL 2033067, at *2. So, on September 15, 2004, the court ordered the parties to "conduct limited document and deposition discovery by November 15, 2004 on the question of stock ownership with a view to preparing a summary judgment motion on that issue." (Min. Order, Sept. 15, 2004 .) After the court granted plaintiffs' requests to extend the discovery deadline until December 31, 2004, the parties filed cross-motions for summary judgment on the stock ownership question on March 7, 2005. Plaintiffs' motion relies on two expert witness reports. Defendants have filed a motion to strike the expert reports, and we suspended briefing on the summary judgment motions pending a ruling on the motion.

> FN2. More precisely, defendants' position is that the sales proceeds are properly treated as "experience gains" held in the Trust for the benefit of *all* current participating employers and employees, and that such treatment is necessary to preserve the Trust's status under § 419A(f)(6).

### DISCUSSION

Defendants claim that the plaintiffs' expert reports should be stricken for two reasons: the reports were not timely disclosed and, alternatively, the reports contain improper opinions on questions of law.

We first take up the issue of timeliness. Defendants served interrogatories on October 7, 2004, requesting that plaintiffs "[i]dentify each person whom you expect to use as an expert witness, whether by testimony or affidavit, on the issues of ownership, sale or distribution of the Demutualized Stock...." *(Defs.' First Interr.,* No. 2.) Plaintiffs responded on November 8, 2004 as follows:
The Plaintiffs object to the this [sic] Interrogatory to the extent it calls for the disclosure of information (and timing of such disclosure) not required by the Federal Rules of Civil Procedure. The Plaintiffs intend to comply with Fed.R.Civ.P.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 3019398 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

26(a)(2). Without waiving this objection, the Plaintiffs state that they intend to use the following persons as expert witnesses on the issues of ownership, sale or distribution of the Demutualized Stock:
Fred Reish, Esq.
Bruce Ashton, Esq.
Reish, Luftman, Reicher and Cohen
11755 Wilshire Blvd. Fl. 10
Los Angeles, CA 90025-1539
(310) 478-5656
All of the above-requested information will be contained in the experts' report once it is prepared.

(*Pls.' Resp. to Interr.*, No. 2.) Defendants also served a request for documents on plaintiffs on October 7, 2004, seeking "any reports" from " anyone whom any Plaintiff expects to use as an expert witness on the issues of ownership, sale or distribution of the Demutualized Stock." (*Defs.' Doc. Reg.*, No. 16.) Plaintiffs' response of November 8, 2004 stated:*3 The Plaintiffs object to this Document Request to the extent it seeks reports provided by consulting experts. The Plaintiffs also object to this Document Request to the extent that it requests the disclosure of information (and the timing of such disclosures) not required by the Federal Rules of Civil Procedure. To date, no such reports have been rendered by the Plaintiffs' testifying experts. The Plaintiffs will comply with the Federal Rules of Civil Procedure. The Plaintiffs will supplement at the appropriate time.

(*Pls.' Resp. Doc. Requests*, No. 16.) Discovery closed on December 31, 2004 without plaintiffs having amended any of their discovery responses. Then, on March 7, 2005, plaintiffs filed with their summary judgment motion an amended interrogatory response that identified William L. Raby as an additional expert and stated that his report (the "Raby Report") and a report prepared by Reish and Ashton (the "R & A Report") were attached.

Defendants' argument is simple: discovery closed on December 31, 2004 and therefore the reports tendered on March 7, 2005 were untimely. Plaintiffs counter that their disclosures were timely under Rule 26(a)(2), which provides that:

[D]isclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial.

Fed.R.Civ.P. 26(a)(2)(C). According to plaintiffs, the court did not set a specific deadline for disclosure of experts, so the 90 day default rule applies and since no trial date has been set, their disclosures are timely. As plaintiffs would have it, then, our order closing discovery on December 31, 2004 referred only to fact discovery. This makes no sense. As noted above, we set a deadline for discovery on the question of stock ownership "with a view to preparing a summary judgment motion on that issue." (Min.Order, Sept. 15, 2004.) Plaintiffs surely knew that this deadline applied to *all* discovery on the issue-fact and witness-and that any expert sought to be relied on in support of their summary judgment motion needed to be disclosed *during discovery* to allow defendants time to depose the expert, retain a rebuttal expert or conduct other related discovery. To allow plaintiffs to spring these reports on defendants two months after the close of discovery would render our order meaningless. The reports were untimely.

Even if plaintiffs could somehow demonstrate that their conduct was the result of an honest misunderstanding, *see Salgado v. General Motors*, 150 F.3d 735, 742 (7th Cir.1998) (tardy discovery response may be allowed under Rule 37(c)(1) if it was justified), there is another reason for striking the R & A Report in its entirety and all but a small portion of the Raby Report. Federal Rule of Evidence 702 provides: "If scientific, technical or other specialized knowledge will *assist the trier of fact to understand the evidence or to determine a fact in issue,* a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702 (emphasis added). Therefore, Rule 702 allows a qualified expert to give both factual and opinion testimony only if the testimony will help in understanding the factual issues in the case. A well-settled corollary is that the Rule does not contemplate expert assistance on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

legal questions. *See United States v. Sinclair,* 74
F.3d 753, 757-58 n. 1 (7th Cir.1996) (Rules "702
and 704 prohibit experts from offering opinions
about legal issues that will determine the outcome
of a case."); *Hugh v. Jacobs,* 961 F.2d 359, 363 (2d
Cir.1992) ("This circuit is in accord with other
circuits in requiring exclusion of expert testimony
that expresses a legal conclusion."); *Aguilar v. Int'l
Longshoremen's Union Local # 10,* 966 F.2d 443,
447 (9th Cir.1992) ("matters of law [are] for the
court's determination .... [and] they were
inappropriate subjects for expert testimony.").[FN3]
This prohibition is not limited to expert testimony
on pure legal matters, but also on mixed questions
of law and fact, *i.e.,* application of law to facts. *See
Haley v. Gross,* 86 F.3d 630, 645 (7th Cir.1996)
(expert may not "improperly tell[ ] the jury why [a
party's] conduct was illegal"); *United States v.
Baskes,* 649 F.2d 471, 479 (7th Cir.1980) ( "
[W]itnesses' opinions as to the legal implications of
conduct are [not] admissible."); *Central Die
Casting and Manufacturing Co., Inc. v. Tokheim
Corp.,* No. 93 C 7692, 1998 U.S. Dist. LEXIS
18472, at *27-28 (N.D.Ill. Nov. 19, 1998) ("the
interpretation of federal regulations is in all
instances for the district court" and an "expert
should not be allowed to opine as to whether [a
party] violated a statute or regulation because he
would be determining a question of law.")

> FN3. An exception inapplicable here is
> that courts are permitted to hear expert
> testimony on foreign law. *See* Fed.R.Civ.P.
> 44.1 ("The court, in determining foreign
> law, may consider any relevant material or
> source, including testimony, whether or not
> submitted by a party or admissible under
> the Federal Rules of Evidence.")

**\*4** The R & A Report was prepared by two
practicing attorneys, C. Frederick Reish and Bruce
L. Ashton. The report indicates that Reish has been "
a pension and employee benefits attorney for over
30 years," and that Ashton has been "a practicing
attorney for over 30 years, focusing on pension and
employee benefits matters for approximately the
last 20 years." (*R & A Report,* p. 1.) Both attorneys
are well-published in their field. (*Id.,* Ex. 2.)

The R & A Report is prefaced with a statement of
its scope and conclusion:
The purpose of this report is to provide our analysis
of whether the Plaintiffs in this action are entitled to
the demutualized stock received by the Professional
Benefit Trust Multiple Employer Welfare Benefit
Plan and Trust (the "PBT Trust") in late 1999 and
early 2000. For the reasons set out in this report, it
is our opinion that the Plaintiffs are entitled to the
demutualized stock under the terms of the PBT
Trust document, and it was a breach of fiduciary
duty and a breach of contract for the Defendants to
retain those shares (and the proceeds thereof) at the
time the Plaintiffs withdrew from the Trust.

(*Id.,* p. 3.) The report presents an opinion, relying
on an IRS Private Letter Ruling and on the United
States Tax Court's decision in *Booth v.
Commissioner,* 108 T.C. 524, 1997 WL 328581
(1997), that the Trust failed to meet the
requirements of 419A(f)(6). This conclusion is
offered in support of the argument in plaintiffs'
summary judgment papers that if the Trust was not
even eligible for the favorable tax treatment under §
419A(f)(6), then distribution of the Demutualized
Stock proceeds could not have, as defendants
contend, jeopardized the Trust's status under the
Code. The report then analyzes ERISA, Department
of Labor regulations, and Trust documents and
opines that defendants breached their fiduciary
duties under ERISA.

The report consists entirely of improper legal
argument. It is an advocacy piece, written by
attorneys, and expressly addressed to the ultimate
legal question before the court: "whether the
Plaintiffs in this action are entitled to the
demutualized stock received by the [Trust]...." (*R &
A Report,* p. 3.) In addition, the report presents
nothing that will assist the court in evaluating any
facts in the case.

The Raby Report is more of the same. It was
prepared by William M. Raby, an accounting
professor at Arizona State University and a "
consultant for tax and compensation planning and
tax controversy and litigation matters." (*Raby
Report,* Ex. A.) The report purports to opine on "
when the demutualization of a life insurance

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                            Page 5

Not Reported in F.Supp.2d, 2005 WL 3019398 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

company would leave a policyholder of such company in the same position after the demutualization as before." (*Id.,* p. 1.) Drawing on Raby's interpretation of sections of the Internal Revenue Code, caselaw and IRS Private Letter Rulings, the report concludes that since the participating employees "owned" the policy prior to demutualization, they also had rights to the stock attributable to the policy through the demutualization process. (*Id.,* p. 1, 6-7.) Whether statutes, caselaw or other authority compel the conclusion that the employees had rights in the stock is, again, a legal question for the court to decide and not a proper subject for an expert report. There is, however, a portion of the report that we do find appropriate for expert treatment and that is the general discussion of "demutualization" which appears under the heading "Demutualization of a Life Insurance Company" on pages 1-3. The demutualizations of Canada Life and Sun Life were significant *factual* events in this case, and an explanation of the demutualization process may be helpful to the court.

**\*5** Except for this demutualization discussion, the reports contain nothing more than legal analysis and conclusions that are properly presented, if anywhere, in counsel's legal memoranda. To permit expert analysis of the law would usurp the province of the court. Moreover, as a practical matter, presenting legal argument in both summary judgment briefs and in expert reports is redundant and confusing. Plaintiffs are of course free to retain their attorney-experts as co-counsel, but dressing up their legal arguments as "expert reports" does not make them any more persuasive and is plainly disallowed under the Federal Rules of Evidence. Perhaps it goes without saying, but our ruling today is not intended as a comment on whether the arguments in the reports are correct; we simply hold that they are not properly advanced in an expert report. Accordingly, with the exception of the general discussion of "demutualization" in the Raby Report, the reports are stricken.

### CONCLUSION

For the foregoing reasons, defendants' motion to

strike plaintiffs' expert reports [70-1] is granted in all respects except for the discussion under the heading "Demutualization of a Life Insurance Company" on pages 1-3 of the Raby Report. Cross-responses to the motions for summary judgment are due on December 8, 2005 and cross-replies will be due on December 29, 2005.

N.D.Ill.,2005.
RLJCS Enterprises, Inc. v. Professional Benefit Trust, Inc.
Not Reported in F.Supp.2d, 2005 WL 3019398 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.